HARING, Receiver, Respondent, vs.. HAMILTON and others,. Appellants.

*April 30 — May 15, 1900.*

*Pledge: Voluntary assignment: Fraudulent conveyances: Intent: Corporations: Misconduct of officers: Liability of pledgee of stock.*

1. An assignment and transfer of stock in a corporation to an attorney as trustee for a creditor of the transferrer, with the understanding and agreement that any surplus remaining in the hands of the trustee after payment of the creditor's claims should be immediately returned to the transferrer by the trustee, is merely a transfer as collateral security by way of pledge, the surplus, if any, remaining the property of the pledgor.

2. A debtor pledged practically all his property to an attorney as trustee for the debtor's wife to secure a debt substantially less than the value of such property. *Held,* that the transaction did not constitute an assignment for the benefit of creditors, since the pledgor still retained a valuable interest in the property, which was subject to execution under sec. 2988, Stats. 1898.

3. An intent to defraud creditors cannot be inferred from the fact. that an insolvent debtor, by paying or securing one creditor, necessarily prevents other creditors from receiving anything or as. much as they would otherwise receive.

4. The pledgee of practically all the stock in a corporation is not liable for depreciation in the value of the corporate property due to the giving of a mortgage on the corporate property, by its officers, in violation of an injunction against the corporation.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

*C. H. Hamilton,* for the appellants.

For the respondent there was a brief by *Haring & Frost,.* attorneys, and *John F. Burke,* attorney for Edgewood Distilling Co., and oral argument by *C. I. Haring.*

CASSODAY, C. J.   On July 3, 1897, Waldheim & Wittenberg obtained a judgment against the defendant *S. R. Miller* for $203.61.   *Miller* appealed from that judgment to this court, and the same was affirmed October 22, 1897 (*Wald-*

*heim v. Miller*, 97 Wis. 300). After the *remittitur* had been
filed in that case, execution was issued on that judgment
November 29, 1897, and returned December 3, 1897, as
wholly unsatisfied. Thereupon, and on or about December
16, 1897, proceedings supplementary to such execution were
commenced, and resulted in the appointment of the plaintiff,
*Haring*, as receiver therein, March 17, 1898. Pursuant to·
an order of the court made April 16, 1898, this action was
commenced by the plaintiff as such receiver to reach and
recover for the benefit of creditors 148 shares of stock, of
the lawful value of $100 each, which had been issued by the
Sam R. Miller Company to the defendant *Samuel R. Miller*,
and by him transferred to the defendant *Charles H. Hamil-
ton* as trustee or attorney for *Katie B. Miller*, wife of *Sam-
uel R. Miller*, and to set aside such transfer as having been
made with intent to defraud the creditors of *Samuel R. Mil-
ler*. The defendants *Charles H. Hamilton, Samuel R. Miller*,.
and *Katie B. Miller* severally and separately answered to
the effect that such transfer of such stock was made to se-
cure a *bona fide* indebtedness due from the defendant *Sam-
uel R. Miller* ·to his wife, *Katie B.*

Upon the trial of the issues thus formed there were found,
in effect, the facts stated, and that September 4, 1897, the
Sam R. Miller Company was incorporated and organized
under the laws of this state, with a capital stock of $15,000,
divided into 150 shares, of $100 each; that on that day
*Samuel R. Miller* turned over and conveyed to that corpora-
tion all of his tangible property, consisting of stock in trade,
store fixtures, book accounts, and assets, and received in ex-
change therefor the 150 shares of capital stock mentioned,
of which 148 shares were issued directly to him, and one
share to his brother John C. Miller, and the other share to
one H. R. Johnson; that September 7, 1897, *Samuel R. Miller*,
as the sole owner thereof, conveyed the 148 shares of such
stock so held by him to the defendant *Charles H. Hamilton*,

as the trustee for the defendant *Katie B. Miller*, with the understanding and agreement that, in case any surplus should remain in the hands of such trustee after paying her claims against *Samuel R. Miller*, such surplus should be immediately returned to *Samuel R. Miller* by such trustee; that such stock constituted all the property of any value then owned by *Samuel R. Miller;* that at the time of such transfer *Samuel R. Miller* was indebted to a number of other persons besides his wife, in large amounts of money, and was insolvent, and knew that he was insolvent, and such stock was received and accepted by *Hamilton* and *Katie B.* with knowledge of such insolvency, and such conveyance of stock was so made and accepted by the defendants for the purpose and with the intention of hindering, delaying, and defrauding his other creditors, including Waldheim & Wettenberg and the Edgewood Distilling Company, a corporation, which had duly intervened herein and had become a party to this action July 9, 1898, and held and owned a judgment duly recovered against *Samuel R. Miller*, March 8, 1898, for $443.72, and that such transfer was so made for the purpose of giving *Katie B. Miller* a preference over the other creditors of her husband; that at the time of such transfer *Samuel R. Miller* was indebted to his wife, *Katie B.*, in the sum of upwards of $7,734.93 and interest, evidenced by two certain promissory notes, one for $4,734.93, dated September 30, 1893, bearing seven per cent. interest, and the other for $3,000 and interest; that from and after the time of such transfer, and ever since September 7, 1897, *Samuel R. Miller* has been exercising certain rights of ownership over the stock, with the knowledge and consent of *Charles H. Hamilton* and *Katie B. Miller*, and has continued to act as a stockholder and officer of the corporation; that *Samuel R. Miller* was duly enjoined from conveying and interfering in any way with such capital stock and any of his property at the time of the appointment of such receiver, and that sub-

sequently *Katie B. Miller* and *Hamilton* were also enjoined
and restrained from transferring such stock and the prop-
erty represented thereby, and all property mentioned in the
pleadings in this action, or in any way interfering with, dis-
posing of, or conveying the same, or making any changes in
the property or the instruments or certificates representing
the same, which injunctional order was still in effect; that
August 5, 1898, while the Sam R. Miller Company was so
enjoined, he, acting as president of the company, signed and
executed what purported to be a chattel mortgage to secure
the payment of $2,500 to Friedman, Keiler & Co., of Ken-
tucky, on which $600 was subsequently paid; that since the
commencement of this action the 148 shares of capital stock
mentioned had largely depreciated in value, in at least the
sum of $1,900, on account of such chattel mortgage incum-
brance, which depreciation resulted from the acts and laches
of the defendants; that immediately after the appointment
of the plaintiff as receiver, and before the commencement of
this action, to wit, March 21, 1898, the receiver duly de-
manded the return of such shares of stock, and gave due
notice of his appointment as receiver, but the defendants
refused to deliver such stock to the plaintiff as such receiver,
and the defendant *Hamilton* has ever since held, and still
continues to hold, such certificates of stock.

As conclusions of law, the court found, in effect, that such
transfer of stock by *Samuel R. Miller* to the defendant
*Hamilton* as trustee for *Katie B. Miller* was fraudulent, and
amounted to a voluntary assignment with unlawful prefer-
ences, and that such assignment was void and contrary to
the statute in such case made and provided; that the plaint-
iff, as receiver, was entitled to the relief prayed, and the re-
turn of the 148 shares of capital stock mentioned, for dis-
tribution under the order of the court; that *Katie B. Miller*
was liable to the plaintiff, as such receiver, for the deprecia-
tion which had taken place in the value of such 148 shares

of stock since March 21, 1898, which was thereby fixed at
$1,900,— and ordered judgment to be entered in favor of
the plaintiff, as receiver, against the defendants, for the im-
mediate transfer and delivery of the 148 shares of stock by
the defendants *Hamilton* and *Katie B. Miller* to the plaintiff,
and, further, a judgment against *Katie B. Miller* for $1,900
damages for depreciation of stock, and for the costs and dis-
bursements of this action.

From the judgment entered upon such findings accord-
ingly, the defendants appeal.

It is practically undisputed that September 4, 1897, the
defendant *Samuel R. Miller* was the owner of two saloons
in Milwaukee; that the aggregate stock in trade, furniture,
fixtures, book accounts, and assets of both establishments
were of the nominal value of $21,000, and that the fair cash
valuation of the same was about $15,000; that at that time
the corporation known as the Sam R. Miller Company was
incorporated and organized under the laws of this state;
that the capital stock of such corporation was $15,000, di-
vided into 150 shares, of $100 each; that thereupon *Samuel
R. Miller* conveyed and transferred to such corporation all
of such property of both such saloons in consideration of
150 shares of such stock, of which 148 shares were duly is-
sued to *Samuel R. Miller*, who was elected president thereof,
one share thereof to his brother John C. Miller, who was
elected secretary thereof, and the other share thereof to H. R.
Johnson, who was elected vice president thereof; that the
defendant *Hamilton* had been attorney for *Samuel R. Mil-
ler*, and drew the articles of incorporation of the company,
and superintended the organization of the same; that at
that time *Samuel R. Miller* was indebted to his wife, the
defendant *Katie B.*, for borrowed money which he had used
in his business, which the court finds to have been upwards
of $7,734.93, evidenced by two promissory notes, and which
indebtedness the defendants claim then exceeded $15,000;

that *Mrs. Miller* had at times been addicted to the use of morphine, and in consequence had at times been insane and confined in different sanitariums; that some two years prior to the formation of such corporation she consulted the defendant *Hamilton*, as an attorney at law, in regard to her financial affairs with her husband, and at that time executed to him a general power of attorney in fact, to act for her in that regard in any manner he might see fit; that acting under the authority given by that power of attorney, and for the purpose of securing the payment of such indebtedness of *Samuel R. Miller* to his wife *Katie B.*, he procured the formation of the corporation and the transfer of the property to the same, and the issuing of the stock, as mentioned, and then, three days afterwards (being September 7, 1897), he induced *Samuel R. Miller* to assign and transfer to him the 148 shares of stock, consisting of eight several certificates, as trustee or attorney in fact, and as collateral security for the payment of such indebtedness to *Katie B. Miller*.

Such assignment and transfer of the stock to *Hamilton* were made, as found by the court, "with the understanding and agreement that in case any surplus remain in the hands of said trustee after paying her claims against her husband, *Samuel R. Miller*, such surplus should be immediately returned unto the said *Sam R. Miller* by the said trustee." This simply means that such assignment and transfer was made as collateral security by way of pledge, the surplus, if any, remaining the property of the pledgor. There is no claim that under ch. 414, Laws of 1891 (sec. 1751, Stats. 1898), such pledge could not be legally made without having been entered in the books of the corporation. *H. W. Wright L. Co. v. Hixon*, 105 Wis. 153. The very purpose of that amendment was to authorize such transfer, when made in good faith and for value, without such entry, and to make the same binding upon all parties.

Haring vs. Hamilton and others.

But the validity of the transaction is challenged by the plaintiff upon other grounds. The plaintiff contends, and the court found as matters of law, in effect, that the transaction amounted to a voluntary assignment with unlawful preferences, and hence was contrary to the statute and void, under the repeated decisions of this court, citing secs. 1693*a*, 1694, Stats. 1898; *Winner v. Hoyt*, 66 Wis. 227, and several other cases following that case. This court has frequently held that a chattel mortgage given by an insolvent debtor to secure the payment of a debt to one of his creditors is not an "assignment for the benefit of creditors," within the meaning of the statutes or decisions cited. *Menzesheimer v. Kennedy*, 75 Wis. 411; *Stevens v. Breen*, 75 Wis. 595; *Cribb v. Hibbard, S., B. & Co.* 77 Wis. 199; *Michelstetter v. Weiner*, 82 Wis. 298. True, the giving and filing of a chattel mortgage are expressly authorized by statute; and the possession by the mortgagee of the property covered by the mortgage, without filing, is held to be equivalent to filing. Sec. 2314, Stats. 1898; *First Nat. Bank v. Damm*, 63 Wis. 249; *Carey v. Liverpool & L. & G. Ins. Co.* 92 Wis. 538, 540. Such mortgage, being given for security, leaves the mortgagor's interest in the property covered by the mortgage subject to the debts of the mortgagor. *Slaughter v. Bernards*, 97 Wis. 184; *Fred Miller B. Co. v. Manasse*, 99 Wis. 102. The same is true of the pledgor's interest in the property pledged. Thus, the statute expressly declares that "when goods and chattels shall be pledged or mortgaged for the payment of money or the performance of any contract or agreement the right and interest in such goods of the person making such pledge or mortgage may be sold on execution against him, and the purchaser shall acquire all his right and interest, and shall be entitled to the possession of such goods and chattels on complying with the terms and conditions of the pledge or mortgage." Sec. 2988, Stats. 1898. Since the statute (sec. 1751) expressly authorized *Samuel R. Miller* to pledge the

stock as he did, and since his "right and interest in such" stock was liable to "be sold on execution against him," it is very manifest that *Katie B.'s* interest in the stock so pledged was measured by the amount of her debt against her husband which the stock was pledged to secure, and not by the value of the stock itself. *McCown v. Russell*, 84 Wis. 122, 127. It follows from what has been said that if such indebtedness did not exceed the amount mentioned in the findings of the court, and the stock so pledged was of par value, then *Samuel R. Miller* did not part with all his property, but continued to retain a large amount subject to execution against him. True, it is said that *Hamilton* received the stock so pledged as trustee. But no one claims that he received it as trustee for any creditor other than *Mrs. Miller.* In receiving such stock as such pledge he acted for and in behalf of *Mrs. Miller.* Undoubtedly she could do through him, as her attorney in fact, in that regard, whatever she could herself do. It is very clear that the transaction did not constitute an assignment for the benefit of creditors, within the meaning of the statutes and decisions of this court cited. It is to be remembered, as indicated in the statutes and several of the cases cited, that an insolvent debtor is at perfect liberty to prefer one creditor to another, if he refrains from making an assignment for the benefit of his creditors. Since *Samuel R. Miller* did so refrain, he was at liberty to secure his indebtedness to his wife in preference to other creditors, provided he did so in a lawful manner.

Counsel for the plaintiff contend, and the court found, that such stock was so pledged and so accepted "for the purpose and with the intention of hindering, delaying, and defrauding the other creditors" of *Samuel R. Miller.* After careful examination of the record, we are convinced that the trial court reached such conclusion on the theory that, whenever an insolvent debtor makes payment to or secures one creditor in preference to others, he thereby deprives such

others, or some of them, from receiving anything or as much as they otherwise would have received, and therefore it necessarily results in hindering, delaying, or defrauding such other creditors, and hence they must be regarded as having so intended. But this court has repeatedly held, in effect, that an insolvent debtor is at perfect liberty to pay in good faith some of his creditors in full or in part, and others not at all, and that this can be done without any intent to hinder, delay, or defraud creditors, within the meaning of the statutes. Secs. 2320, 2323. True, the payment in good faith by an insolvent debtor of one or more of his creditors in full may result in defeating others, but such result is the mere incident to the preferring of one creditor to another, and hence does not come under the condemnation of the statutes. The object to be attained in such a case is to pay in good faith an honest debt, even though it leaves the debtor in no condition to pay any other debts. It is only when the object sought to be attained is itself vicious that the statutes condemn the transaction. *Erdall v. Atwood*, 79 Wis. 7, 8, and cases there cited. To the same effect, *Bannister v. Phelps*, 81 Wis. 256; *Barr v. Church*, 82 Wis. 382, 389; *Bleiler v. Moore*, 94 Wis. 385; *Koch v. Peters*, 97 Wis. 492; *Carey v. Dyer*, 97 Wis. 554; *H. B. Claflin Co. v. Grashorn*, 99 Wis. 356; *Cunningham v. Eugan*, 102 Wis. 272.

The evidence merely goes to the extent of proving that at the time of making the pledge *Samuel R. Miller* was being pressed by his creditors and was insolvent, but expected and intended to pay all his debts in time. *Hamilton* testified to the effect that when he received the stock he did not know that *Mr. Miller* was then insolvent, nor that the stock so pledged was practically all of his nonexempt property, and that he was then informed by *Mr. Miller* that he could pay everybody in full, unless he was crowded to a forced sale. Some of the cases cited go to the extent of holding that, to render a chattel mortgage or pledge given to secure

a *bona fide* debt fraudulent, it is not enough to show that the creditor knew or believed that the debtor was insolvent and intended to hinder, delay, or defraud creditors, but that it must be shown in addition that the creditor participated in such intent. *Erdall v. Atwood, supra; Bleiler v. Moore, supra; Koch v. Peters, supra; H. B. Claflin Co. v. Grashorn, supra. Hamilton* testified that whatever he did was to protect *Mrs. Miller,* as far as possible, and for that purpose he insisted upon *Mr. Miller* pledging the stock, as he did. We fail to find evidence sufficient to support the findings that *Mr. Miller* intended anything further by the transaction than to secure his indebtedness to his wife,— much less, that *Hamilton,* by taking such security, participated in any intent to hinder, delay, or defraud *Mr. Miller's* other creditors.

As indicated, the trial court found that in violation of an injunction the corporation on August 5, 1898, gave a chattel mortgage to a Kentucky party upon the property, upon which there was still due and unpaid $1,900, and thereby depreciated the value of the property to that extent, and that *Mrs. Miller* was liable in damages to that amount for such depreciation. Upon what theory the trial court reached such conclusion, we are unable to perceive. Counsel seem to argue that, because *Hamilton* held the stock for her, she was liable for the acts of the officers of the corporation in giving the mortgage. We are unable to perceive any force to such argument. There is no claim that *Mrs. Miller* or her attorney in fact violated any injunction, and we perceive no good reason for holding her liable for the conduct of others.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded with direction to dismiss the complaint.