MARKHAM, Respondent, v. MARKHAM, Appellant.

*No. 289.  Argued October 30, 1974.—Decided December 2, 1974.*
(Also reported in 223 N. W. 2d 616.)

736

738

For the appellant there were briefs by *Cohen, Grant, Liebmann & Conway, Ltd., Steven I. Cohen* and *Owen F. Monfils, Ltd.,* all of Green Bay, and oral argument by *Steven I. Cohen.*

For the respondent there was a brief by *James H. Plier, Michael T. Judge* and *Plier Law Office,* all of Oconto, and oral argument by *James H. Plier.*

CONNOR T. HANSEN, J. Judgment was entered as of May 26, 1972, granting the plaintiff-respondent, Walter J. Markham (hereinafter respondent), an absolute divorce from the defendant-appellant, Gloria M. Markham (hereinafter appellant), on the grounds of cruel and inhuman treatment. Trial was to the court on March 26 and 27, 1972, and May 24, 25 and 26, 1972. The judgment divided the marital estate, giving approximately one third of it to the appellant and awarded her $400 a month alimony. There were four children born of this marriage. The custody of the then only minor child (now an adult) was awarded to the appellant, and the respondent was ordered to pay $150 per month for the child's support and maintenance. The respondent was ordered to pay $800 toward the appellant's attorneys' fees and one half the costs in the amount of $977.83. A subsequent order of the trial court denied the petition of the appellant for an allowance of attorneys' fees to prosecute this appeal.

At the time of trial, the parties had been married for nearly thirty years. Appellant was fifty years old and respondent was fifty-one years old. Neither party brought assets into the marriage and, with little exception, all assets accumulated during the course of the marriage were the result of the earnings of the respondent.

Respondent held various jobs during the marriage. However, in 1963, he and an associate, Glen Nordin, purchased the Carver Boat Company, Inc. At the time of trial, both were employees and officers of the boat company and each owned approximately 35 percent of the stock of the corporation. There was a total of 16 stockholders. Respondent also operated a partnership with Nordin, d/b/a W. J. Markham Company, the business of which involved the purchase and resale of marine accessories. The respondent's total annual earnings from the boat company and the partnership were $33,000.

Appellant has a high school education and two years of business college. She is a trained stenographer and bookkeeper, and during the marriage she earned a total of $6,109 from part-time employment in these fields. Her health is good except for nervousness and an arthritic problem in her fingers and toes for which she is receiving treatment. Her last job was approximately four years prior to the divorce.

The following issues are raised on this appeal:

1. Were the trial court's findings as to the value of the residence, the cottage, the hunting camp, the government bonds, the corporate stock, the Markham-Nordin debt, and the life insurance policies, against the great weight and clear preponderance of the evidence?

2. Did the trial court err in not finding the transfer involving the W. J. Markham Company void as a fraud on the wife?

3. Did the trial court abuse its discretion in the property award to the appellant?

4. Did the trial court abuse its discretion in the alimony award to the appellant?

5. Did the trial court abuse its discretion in the attorney fee award to the appellant?

6. Did the trial court abuse its discretion in denying appellant's motion for attorneys' fees for this appeal?

*Asset values.*

This court has often held that the findings of a trial court without a jury will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Milbauer v. Transport Employes' Mut. Benefit Society* (1973), 56 Wis. 2d 860, 862, 203 N. W. 2d 135; *Peabody Seating Co. v. Jim Cullen, Inc.* (1972), 56 Wis. 2d 119, 127, 128, 201 N. W. 2d 546. The weight of the testimony and the credibility of witnesses are primarily for the trial court and where more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the one drawn by the trier of fact. *Precision Service Co. v. Schill* (1973), 60 Wis. 2d 346, 348, 210 N. W. 2d 706; *Milbauer v. Transport Employes' Mut. Benefit Society, supra,* page 865.

In applying the law to the facts of this case, a review of the record reflects that the trial court based its findings of value of the marital estate upon those set forth in Exhibit 1A as offered by the respondent.

Exhibit 1A sets forth the assets, liabilities and net worth of the estate as follows:

*Assets:*

| | |
|---|---|
| Cash | $ 220.00 |
| Residence, furniture and fixtures therein | 25,000.00 |
| Cottage, furniture and fixtures therein | 6,500.00 |
| Hunting camp, furniture and fixtures therein | 7,500.00 |
| U. S. Bonds | 3,250.00 |

| | |
|---|---:|
| Accrued interest on U. S. Bonds ........... | 586.25 |
| Plymouth automobile .................... | 500.00 |
| Dodge Automobile ..................... | 500.00 |
| Snowmobile ........................... | 300.00 |
| Cash value life insurance (N. W. Mutual #3084962) .......................... | 689.00 |
| Loans receivable (Carver Boat Corp.) ...... | 1,517.10 |
| Wisconsin income tax refund due—1970 .... | 206.02 |
| Carver Boat Corp. stock ................. | 99,386.00 |
| W. J. Markham Co. (½ interest) .......... | 6,216.44 |

| | |
|---|---:|
| *Total Assets* | $152,370.81 |

*Liabilities:*

| | |
|---|---:|
| Installment notes on Carver Boat Corp. stock: | |
| Charles Carter, Sr. ............... | $12,082.10 |
| Charles Carter, Jr. ............... | 958.95 |
| Gary Carter .................... | 958.95 |
| Bank of Black Creek ............ | 3,977.77 |
| Accounts payable: | |
| Carver Boat Corp. ............... | 2,561.69 |
| Laney Mfg. Co. ................. | 1,661.30 |
| Darwin Electric, Inc. ............ | 1,185.87 |
| University of Wisconsin Extension . | 416.85 |
| Wedding Expenses (various vendors) .......................... | 250.00 |
| Carver Boat Corp. for split dollar insurance ..................... | 200.00 |
| Loans due Glen Nordin .................. | 3,750.00 |
| Residence mortgage .................... | 1,575.00 |

| | |
|---|---:|
| *Total Liabilities* | $ 29,578.48 |

| | |
|---|---:|
| *Net Worth* | $122,792.33 |

*Residence.*

This item was the subject of a stipulation by the parties, in open court, accepted by the court, and properly

transcribed in the record. By stipulation, the value was set at $23,500. Relying on the value set forth in Exhibit 1A, the court found that it was worth $25,000. Respondent asserts that the property was subject to a mortgage of $1,575, which the trial court found, and that the difference between the stipulated value and the judgment value is explained by the trial court's order that respondent satisfy this mortgage. This attempt to reconcile the amounts is without merit. The stipulated market value of the property remains the same whether or not encumbered. Only the equity in the residence is affected by the mortgage. At the time the stipulation was adopted, there had been no mention of the outstanding mortgage, and the testimony and stipulation were in terms of market value, not equity.

This court has held that a stipulation made between the parties in open court is binding on the parties and should be honored by the court. *General Automotive Mfg. Co. v. Singer* (1963), 19 Wis. 2d 528, 535, 536, 120 N. W. 2d 659.

We find the value of the residence to be $23,500, not $25,000.

*Cottage.*

The trial court, adopting the figure in Exhibit 1A, valued this property at $6,500. The respondent stated that the value in Exhibit 1A is what it cost him to purchase the property. Respondent called Walter Heise, a real estate broker from the immediate area, who contradicted the respondent stating that respondent had purchased the property in 1961 for $6,700; that property values had gone up since then; and that the cottage was now worth $7,500. The parties then stipulated that Heise should immediately sell the property for $7,500 and deposit the proceeds, minus a $450 brokerage fee, in court. No other testimony was offered on the value of this asset. The finding by the trial court is against the great weight

and clear preponderance of the evidence. This asset was actually sold for $7,500 less the brokerage fee. On that basis, its value is $7,050, instead of $6,500.

*Hunting Camp.*

Respondent testified that he included this item at $7,500 based on what he paid for it eight years ago, plus the cost of the improvements he had made to the property. The trial court accepted this value. However, both the respondent and appellant introduced written appraisals of the property as conducted by two different real estate appraisers. Respondent's expert appraised the property at $13,500, and appellant's expert at $19,500. There was evidence that respondent's expert was low by $1,000 (undervalued furniture by $500 and did not include $500 lawn tractor), and that appellant's expert was high by an even greater amount (appraisal included a $1,000 well which was not on the property, overvalued the septic system, and there is no bath or running water as assumed). This finding of the trial court was also against the great weight and clear preponderance of the evidence. We are of the opinion the record contains credible evidence to support a finding that the clear market value of the hunting camp was $15,000. We here determine such to be the value of this asset.

*Government Bonds.*

Appellant and respondent had been saving by purchasing bonds since 1957. The bonds were kept in a joint safety-deposit box. On July 29, 1970, respondent removed the bonds from the box and, by his own testimony, cashed some of them on July 21, 1971, and March 10, 1972. The value of those cashed was $1,774.32. Respondent testified that the value recorded in Exhibit 1A was the value of the bonds, plus interest, remaining in his possession. On challenge by appellant, respondent produced the re-

maining bonds and gave them to his own expert for valuation. That expert, Donald Arlyn Glynn, later called by respondent, testified that the remaining bonds were worth $4,264.64 as of the day of the trial. The trial court found the bonds to be worth $3,836.25 (bonds plus interest). No other testimony was introduced showing a value less than $4,264.64. Again, this finding of the trial court is against the great weight and clear preponderance of the evidence. The value should be $4,264.64, instead of $3,836.25.

We have reviewed the record in regard to the values determined by the trial court as related to the Carver Boat Company, Inc., stock, the Markham-Nordin debt, and the cash values of life insurance. There was conflicting testimony as to the value of these assets. As the trier of fact, the trial court had the duty to determine the credibility of the witnesses and resolve the conflict in their testimony. *Wahl v. Wahl* (1968), 39 Wis. 2d 510, 520, 159 N. W. 2d 651. As we view the record in this case, it could be said that another trier of fact might have arrived at different values on these three items when resolving the conflict in the evidence. However, it cannot be said that the findings of the trial court are against the great weight and clear preponderance of the evidence. Since we reach this conclusion, no useful purpose will be served by herein setting forth a detailed analysis of the conflicting testimony on the values of the Carver Boat Company, Inc., stock, the Markham-Nordin debt, or the cash values of the life insurance.

*Transfer of W. J. Markham Company as fraud.*

The trial court found that only one half of the W. J. Markham Company, or $6,216.44, was currently owned by respondent. Appellant contends that the respondent transferred a one-half interest in the company to Nordin

without consideration, or for an inadequate consideration, in contemplation of the divorce and inferentially with the intent to keep assets from the appellant. *See, e.g., Waukesha County Dept. of Social Services v. Loper* (1972), 53 Wis. 2d 713, 193 N. W. 2d 679. While appellant does not ask that the transaction be found void, she does ask that the full value of the company be listed as an asset and treated as fully distributed to the respondent.

In *Caldwell v. Caldwell* (1958), 5 Wis. 2d 146, 92 N. W. 2d 356, this court determined that where a husband has made a gift or transfer, without consideration, of a substantial portion of his property to a third person in order to avoid payment of alimony or support money or to escape or minimize the division of property which might be ordered against him, that the court has the power to make the transferee a party to the divorce and cancel the transaction to the extent necessary to protect the rights of the wife and minor children. *Caldwell v. Caldwell, supra,* page 158. Thus this court held that a wife was a creditor within the protection of sec. 242.07, Stats., which provides:

"242.07 **Fraud in fact.** Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Appellant contends that the intent required under the statute can be inferred from the following facts: (1) In March, 1968, the parties permanently separated; (2) in December, 1969, the respondent decided to cut Nordin into the partnership on the basis that Nordin would work for two years without being able to draw any money, but that at the end of the two years Nordin would own half the business and have the right to half the profits from the beginning of the agreement; (3) there was no

written agreement evidencing this arrangement; (4) in October, 1970, appellant filed for a divorce which was dismissed early in 1971, for failure of appellant to sign a complaint; (5) that shortly thereafter, in April, 1971, the respondent filed this action for divorce; (6) that Nordin did the same or less work for the company than the respondent, but that Nordin received an equity interest for his efforts in addition to half of the profits while the respondent only received half of the profits; and (7) that Nordin would end up with half of a company worth $12,000 for two-year's labor at two to three hours per week.

On the other hand, the following facts support a finding of the lack of any intent to defraud the wife: (1) Although there was no written agreement, Nordin's income tax returns for 1970 and 1971 and the partnership returns for the same period indicate that Nordin reported as income half the profits from the company plus a contribution of services in lieu of money to the equity of the partnership; (2) the value of the company at the time the agreement was reached, while not definitely established in the record, was less than $12,000, and the respondent's equity contribution to the business at the time of the agreement was only $2,169.91 and it was this figure that Nordin was to match by the work he was to perform over two years; (3) the idea of making Nordin a partner had been considered for three or four years prior to the agreement; (4) Nordin was made a partner because the respondent felt it was unfair for him to spend Carver time on the partnership when he should have been devoting as much time to running Carver as Nordin; and (5) the divorce filed by the appellant in October, 1970, post-dated the agreement and was the second divorce for which appellant had filed, both of which were dismissed or withdrawn.

This court has held that services performed can serve as consideration for a transfer of property even though

the value of the services are slightly less than the value of the property transferred. *Byrnes v. Clark* (1883), 57 Wis. 13, 14 N. W. 815. (Services performed for father by son amounting to $1,000 is adequate consideration for the transfer of land worth $1,500 and intent otherwise not established, the transfer is not void as fraud on creditor.) Further, this court has held that the burden of establishing the fraudulent intent on the part of the transferor by clear, satisfactory and convincing evidence is on the creditor. *Kerbet v. Behling* (1953), 265 Wis. 288, 61 N. W. 2d 205; *Zimdars v. Zimdars* (1941), 236 Wis. 484, 295 N. W. 675.

Unlike *Caldwell v. Caldwell, supra,* the present case does not involve a transfer for no consideration, nor does the transfer involve a substantial portion of the respondent's assets. Further, in this case there was a valid business purpose behind the transfer, and no actual intent to deprive the appellant of property has been shown. The finding of the trial court is not against the great weight and clear preponderance of the evidence.

### Property award.

This court has held that the division of the marital property is a decision resting within the sound discretion of the trial court and such decision will not be reversed on appeal unless an abuse of discretion is shown. *Vier v. Vier* (1974), 62 Wis. 2d 636, 215 N. W. 2d 432; *Husting v. Husting* (1972), 54 Wis. 2d 87, 194 N. W. 2d 801. In *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 173 N. W. 2d 142, this court set forth some of the relevant considerations useful in determining a fair division of the marital property under the flexible approach required by sec. 247.26, Stats., including: (1) The length of the marriage, (2) the age and health of the parties, (3) the ability of the parties to support themselves, (4) the liability of the

parties for debts, (5) the general circumstances of the case including grievous misconduct by one of the parties, (6) whether the division was in addition to or in lieu of alimony, (7) the method by which the marital estate was acquired, (8) whether the wife had any separate estate, and (9) whether there was any liability for support of minor children. *Lacey v. Lacey, supra,* pages 383, 384. This court has also held that tax consequences are a relevant consideration. *Wahl v. Wahl, supra,* pages 517, 518.

In the present case, the trial court did not specifically state how it evaluated these specific factors in arriving at its decision; however, the opinions and findings of the court do reflect their consideration and the record appears sufficiently complete for this court to review the trial court's decision in relation to these factors. Commenting on the review posture of a case where the trial court's decision did not expressly evaluate the *Lacey* factors, we have said:

"However, the *Lacey Case* stated that: 'The responsibility of the trial court is to fairly, equitably and justly divide the marital property between the spouses, and where it begins is not crucial. It is where it ends that is to be reviewed on appeal.' Here, although the trial court did not precisely follow or use the *Lacey* guidelines, it did list the factors which it felt made its division of property an equitable result. It is now up to this court to determine whether in fact the division was a proper exercise of discretion." *Tesch v. Tesch* (1974), 63 Wis. 2d 320, 328, 217 N. W. 2d 647.

The record reflects that the following factors favor the appellant: (1) The marriage was for nearly thirty years; (2) appellant is fifty years old and has some arthritic problems in her fingers which might limit her ability to work; (3) appellant has borne and raised four children during the marriage and thereby contributed greatly to

the marital estate—*Wahl v. Wahl, supra,* page 523—
*Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 155 N. W. 2d
130; (4) all of the marital estate was accumulated during
the marriage; and (5) appellant has the custody of the
remaining minor child (age fifteen) which may make
it more difficult for her to work and care for the child.

On the other hand, the following factors favor the
respondent: (1) appellant, despite arthritic problems, is
not incapacitated for work and has educational back-
ground and experience sufficient to allow her to do steno-
graphic and bookkeeping work; (2) respondent is liable
for debts in excess of $29,000; (3) respondent is liable for
permanent alimony of $400 per month and child support
payments of $150 per month as well as the doctor and
dentist expenses of the minor child; (4) respondent has
been contributing the total cost of putting the second
youngest child through school (although he is not legally
required to do so) ; (5) the appellant has some inheritance
from her family (amount undisclosed) ; and (6) the mis-
conduct of the appellant which served as the basis for
awarding the divorce to the husband, although not
grievous, did involve her continued association with other
married men over the few years immediately preceding
the divorce.

It further appears that some consideration was given
to the tax considerations of the property division, in
particular as to the $17,000 amount that respondent is to
pay over ten-and-one-half years. Originally the trial court
indicated that it would award $10,000, but after the ap-
pellant argued tax considerations in her trial brief, the
court changed the award to $17,000.

Based on the trial court's figures, the net award to the
wife was approximately one third of the marital estate.
Appellant contends that the $17,000 should be reduced to
present value because it is paid over ten-plus years.

This court has not heretofore introduced the element of
"reduction to present value" as a consideration in the

determination of the percentage of the property division of a marital estate in a divorce action. We decline to do so in this case. However, we have recognized there may be a requirement to pay interest when payment of money in a property settlement is to be made in deferred installments. *Tesch v. Tesch, supra,* page 325.

We have heretofore determined that the findings of the trial court as to the values of the house, cottage, hunting camp and government bonds, are against the great weight and clear preponderance of the evidence. The values on such items which we here determine are supported by credible evidence, increase the value of the assets of the marital estate by approximately $8,000. We are of the opinion that equity and justice require that the appellant receive the full benefit of such increased adjustment in the marital estate. Thus the cash award to the appellant is increased from $17,000 to $25,000, which we deem to be fair and reasonable under the facts and circumstances of this case.

On appeal, appellant requests that as to each asset where this court decides an error has been made below, that this court fix a fair value additur or remittitur. *Cf. Helleckson v. Loiselle* (1967), 37 Wis. 2d 423, 155 N. W. 2d 45. Ordinarily, we would do so. However, in this case, we are of the opinion that the interest of justice and of both parties will best be served by the resolution of this issue on appeal rather than by remand with an option of a new trial or an additur.

However, the resolution of the manner in which it is paid must be made by the trial court, and in consideration of the need of the appellant and the ability of the respondent to pay. Also, on remand, a suggestion that need not be followed is that the trial court give consideration to the payment of interest on the deferred payments of the marital estate division.

*Alimony award.*

Appellant also attacks the permanent alimony awarded by the trial court as being an abuse of discretion. Appellant points out that alimony awards which have been approved by this court in other cases involving a husband earning about the same amount as the respondent have been greater than in the instant case. *Wetzel v. Wetzel* (1967), 35 Wis. 2d 103, 150 N. W. 2d 482; *Williams v. Williams* (1969), 44 Wis. 2d 651, 171 N. W. 2d 902. These cases can be distinguished on their facts, and thus while helpful, are not dispositive of the issue.

This court has held that the question of alimony is one within the discretion of the trial court, and its decision should be based on all the facts and circumstances of the particular case. *Wetzel v. Wetzel, supra,* page 109. Generally, the trial court is to consider the needs of the wife and the ability of the husband to pay. *Hirth v. Hirth* (1970), 48 Wis. 2d 491, 180 N. W. 2d 601. The wife's station in life is a factor, but not the only factor to be considered. *Hirth v. Hirth, supra,* page 494; *Wetzel v. Wetzel, supra,* pages 109, 110. Further, this court has held that in some cases where a substantial amount of the assets have been allocated to the wife, it may be contemplated that part of the principal be used for her maintenance. *Wetzel v. Wetzel, supra,* page 110.

The evidence in this case indicates, and the trial court found, that the respondent was earning nearly $33,000 per year, but that state and federal taxes left him with a net income of only $24,000 to $25,000 per year. This figure is further substantially reduced by the recurring payments on the indebtedness incurred on the purchase of Carver of nearly $689 per month. Continued operation of Carver is essential to the respondent's ability to pay the alimony and the cash portion of the property settle-

ment. The balance available to the respondent is approximately $1,357 per month out of which he must pay $550 per month in alimony and support, plus the other debts not associated with the purchase of Carver, plus the medical and dental expenses of the minor child, and the respondent's own living expenses. Further, the property award to the appellant requires the payment of a substantial sum to the appellant over a period of time. Finally, even though the appellant submitted what might be called a reasonable budget for her needs of $628.20, per month, the trial court specifically found that she was capable of working. Under these circumstances, the trial court did not abuse its discretion.

Appellant further contends that the trial court did not consider the tax impact of the alimony award. *Wetzel v. Wetzel, supra.* Where, as here, the issue was raised in the trial court, this court presumes that the trial court considered it. *Seiler v. Seiler* (1970), 48 Wis. 2d 400, 180 N. W. 2d 627. This court has not required that there be a specific finding in regard to tax impact on alimony awards. *Williams v. Williams, supra,* page 672.

### Attorneys' fees for divorce.

The trial court awarded appellant $800 for her legal fees for this divorce and $977.83 (one half) for her disbursements. Appellant attacks this award as being an abuse of discretion and cites cases in which this court has approved much larger awards. *Johnson v. Johnson* (1969), 42 Wis. 2d 237, 166 N. W. 2d 230 ($5,250 fees plus $515 disbursements) ; *Williams v. Williams, supra,* page 673 ($4,000 fees plus $1,000 costs) ; *Hennen v. Hennen* (1972), 53 Wis. 2d 600, 610, 193 N. W. 2d 717 ($2,500 fees which was one half the reasonable fees). The record indicates that one of appellant's lawyers spent

100-plus hours on this case, but no total fee is shown and no hours or fee for the other of appellant's lawyers is shown.

This court has held that in order to determine the amount of contribution by a husband to a wife's attorneys' fees, it is first necessary to establish the reasonableness of the total fee. *Hennen v. Hennen, supra,* page 606. It appears from the record that the trial court made no such determination. This court has also held that the value of attorney's fees or services, as determined by the trial court, is not subject to the usual test of "great weight and clear preponderance" on appeal. This is because the expertise necessary for such a determination is shared alike by the members of this court with trial courts. *Touchett v. E Z Paintr Corp.* (1961), 14 Wis. 2d 479, 488, 111 N. W. 2d 419.

Also, it has been stated:

". . . It is not really the type of issue or question of fact where an adversary presentation is necessary to the presentation of evidence necessary to a determination [as to reasonableness of fees]. And, as pointed out by the plaintiff, the *Hennen v. Hennen Case* allows the supreme court on review to make an independent determination of the reasonableness of attorneys' fees. . . ." *Tesch v. Tesch, supra,* page 335.

We deem this an appropriate case in which to make an independent determination, not of the reasonableness of the appellant's attorneys' fees, but of the reasonableness of the time spent by the appellant's attorneys in relation to the complexity of the case and a fair and reasonable contribution by the respondent. We are of the opinion the trial court abused its discretion in determining such an amount to be $800. *O'Connor v. O'Connor* (1970), 48 Wis. 2d 535, 541, 180 N. W. 2d 735.

The record reveals that this was a contested divorce proceeding, involving five days of trial in which many of

the alleged assets and liabilities of the respondent were challenged, requiring expert testimony, appraisal fees, lengthy investigation and extended trial preparation. The amount of money involved was substantial. The professional skill and experience required was significant. So too, the pecuniary benefit derived by the appellant from the lawyers' services was substantial. *See: Hennen v. Hennen, supra.* Therefore, based on the record as presented, it is felt that the expenditure of 100-plus hours and $1,900 in disbursements, while high, was not unreasonable.

". . . The test as to whether any such contribution can be ordered, and in what amount, is exactly the same as for alimony payments: (1) The need of the wife; and (2) the ability to pay of the husband. . . ." *Hirth v. Hirth, supra,* page 497.

After a review of the record, and giving consideration to all the factors, it is our independent judgment that reasonable contribution by the respondent to the appellant's attorneys' fees is $1,500 instead of $800, as ordered by the trial court, and the judgment is so modified.

### Attorneys' fees on appeal.

The appellant contends that the trial court abused its discretion in denying her motion to have respondent contribute to her legal fees in bringing this appeal. We agree that it did. *Cary v. Cary* (1970), 47 Wis. 2d 689, 177 N. W. 2d 924.

The issues in this case were vigorously contested and in no way frivolous. The trial court should have ordered an allowance to the appellant to prosecute this appeal. We are of the opinion $500 represents such a reasonable allowance, and it is ordered that the respondent pay such sum.

In conclusion, it is determined that the findings of the trial court as to the value of certain of the assets of the marital estate are against the great weight and clear preponderance of the evidence. As a result, the judgment is modified to provide that the cash payment portion of the property settlement be increased from $17,000 to $25,000; that the cause be remanded for a determination, consistent with this opinion, as to the manner in which such additional sum be paid; and that consideration be given as to whether deferred payments on the cash portion of the property settlement should be subject to interest.

Further, that our independent review of the record reflects that a reasonable allowance for appellant's attorneys' fees at trial is $1,500 rather than $800, as determined by the trial court, and that the judgment be so modified; and that the trial court abused its discretion in not allowing the appellant's attorneys' fees to prosecute this appeal; and that a reasonable allowance of such purpose is $500, and it is ordered that the respondent pay such sum.

*By the Court.*—Judgment modified and cause remanded.