In the Matter of John A. BLINT, a/k/a John Albert Blint, Debtor.

Kathleen BLINT, Plaintiff,

v.

John A. BLINT, a/k/a John Albert Blint, Frank A. Ross, Jr., Albert Blint, Laura Blint, and Van Metre, Hanson, Clarke, Schnitzler & Meyer, Defendants.

Adv. No. 82–0178.

United States Bankruptcy Court, W.D. Wisconsin.

Nov. 9, 1982.

Frank Ross, Jr., Ross & Chatterton, Madison, Wis., for defendants.

William T. Henderson, Collins & Henderson, Beloit, Wis., for plaintiff.

## DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

John and Kathleen Blint were divorced in 1974. Custody of the couple's two children was awarded to Kathleen, and John was ordered to pay support. During the marriage John, or John and Kathleen, had borrowed money from John's parents, Albert and Laura Blint. The divorce judgment required John to pay all debts, including the one to his parents.

Following the divorce, John continued to borrow from his parents from time to time. To secure his indebtedness to them, in 1977 he and his second wife gave a mortgage on the property he owned near Hwy. 14 outside Janesville.

Beginning in 1979, John failed to make regular support payments as ordered by the divorce court. At various times Kathleen initiated contempt proceedings. The court repeatedly held John in contempt and issued body attachments on several occasions. Nonetheless, payments were irregular and incomplete.

When John filed for relief under the Bankruptcy Code on May 7, 1981, he owed alimony and child support in the amount of

$1,056.45. He also owed a substantial debt to his parents, Albert and Laura Blint. In the course of the bankruptcy proceeding, the bankruptcy court granted Kathleen Blint relief from stay to pursue John for unpaid alimony and support based on its finding that the obligations were nondischargeable pursuant to 11 U.S.C. § 523(a)(5), and that the collection of alimony and support was made exempt from stay provisions by 11 U.S.C. § 362(b)(2).

Kathleen initiated a motion for contempt in state court on August 19, 1981. On September 3, 1981, Kathleen moved the state court for an order creating a trust for the support of the children. A notice of motion was served on John's attorney on September 8, 1981. The trust was to be funded with proceeds from an auction of John's exempt household goods (to be held September 5, 1981) and with payments from John's interest in an exempt profit sharing plan with a former employer, the Westphal Company. On September 4, 1981, the state court issued an order restraining John from disposing of those assets pending a hearing of Kathleen's motion.

On or about September 1, 1981, and prior to the activity described in the previous paragraph, John retained Attorney Frank A. Ross, Jr. whom he substituted for his previous attorneys in this case. As part of Ross's retainer, John assigned Ross the proceeds of the impending auction of exempt personal property to the amount of $5,765.10, (a sum previously claimed by Ross in Blint's bankruptcy) for payment of anticipated legal fees. Also, on September 1, 1981, John assigned his interest in the profit sharing plan with the Westphal Company to Albert and Laura Blint. Consideration for the assignment to Albert and Laura consisted of both their previous loans to John and their contemporaneous subordination of their mortgage in favor of John's other creditors.

On February 17, 1982 John received a discharge in bankruptcy, discharging, *inter alia,* John's debt to his parents. Several of John's debts had been determined to be nondischargeable in prior adversary proceedings. John subsequently disappeared and his present whereabouts is unknown.

The state court granted Kathleen's motion November 6, 1981, ordering the payment of the monies into a trust account at the Bank of Wisconsin. Kathleen then brought this action seeking to invalidate the transfers to Ross and to the elder Blints under the Uniform Fraudulent Conveyances Act as enacted in Wisconsin.

■ The proceeds of the auction and the profit sharing plan have not yet been disbursed and Kathleen still seeks to establish a trust fund for the children's support funded by those proceeds. She has adequately established the propriety under Wisconsin law of sequestering funds to insure the payment of support. However, the power of the court to create a support trust does not permit the impressing of that trust upon property in which the parent has no interest. For John to have an interest in the assigned funds, his transfers to Ross and to his parents must be set aside as fraudulent.

Remedies for fraudulent conveyances are specified in Wis.Stat. § 242.09(1), which reads as follows:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser, (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or (b) Disregard the conveyance and attach or levy execution upon the property conveyed.

To demonstrate that the transfers are fraudulent under Chapter 242 of the Wisconsin Statutes, Kathleen must establish that John's transfer either was made without fair consideration (Wis.Stat. § 242.04) or was made with an actual intent to avoid his support arrearages (Wis.Stat. § 242.07). She has failed to establish either.

Section 242.04 provides that, regardless of intent, a transaction is fraudulent to creditors if it is made without consideration. The parties agree that John transferred the exempt assets for present value. The proceeds of the auction of exempt property were assigned to Ross to assure his providing legal services at the time that John discharged his former attorneys. The profit sharing plan was assigned to John's parents in consideration for their subordinating their mortgage to interests granted other creditors.

Although it is true that intrafamilial transfers require careful scrutiny as to intent and consideration, the courts will not overrule a transfer to a family member solely because of the relationship. If the debtor transfers exempt property to another family member to satisfy a valid debt, the transfer will not be ruled fraudulent. *Hibben v. Soyer*, 33 Wis. 319 (1873). Similarly, under Wisconsin law, a debtor may favor one creditor over the others, without regard to any family relationship, if the transfer is made to satisfy a debt. *Barr v. Church*, 82 Wis. 382, 52 N.W. 591 (1892). Not only did Kathleen fail to present evidence of lack of consideration from Albert and Laura, she recognized the consideration in the recitation of facts in her brief. Thus the transfer can be set aside only if John performed it with actual intent to avoid his responsibilities.

Kathleen relies on the timing of the transfers to establish that John undertook them solely to avoid his child support obligations. Her only evidence is that the transfers occurred on or about September 1, 1981, just after she initiated the contempt proceeding in August. A mere coincidence of timing is not sufficient to establish that a transfer is fraudulent in the absence of other evidence revealing actual intent or lack of consideration. *Markham v. Markham*, 65 Wis.2d 735, 223 N.W.2d 616 (1974). In a divorce action, Mrs. Markham sought to have the divorce court annul her husband's transfer of one-half of his business property to his partner for services the partner had previously rendered to the business. The court found that the partner had rendered sufficient services to merit the transfer and that the fact that the transfer occurred at the same time as the divorce was immaterial in the absence of any other evidence of fraudulent intent. 65 Wis.2d at 748, 223 N.W.2d 616.

Kathleen presented no evidence establishing that the transfers were motivated by fraudulent intent. In her August action, Kathleen sought only the contempt sanction which had been unsuccessful in compelling John to meet his obligations in the past. She did not initiate any actions specifically seeking the profit sharing plan and the auction proceeds until September 3, two days after John had made the assignments. It is difficult to believe that John would transfer his remaining assets in fear of a proceeding which had not frightened him to action in the past. The record shows that these were John's only remaining assets. There is no evidence that prior to being served with the restraining order on September 4, John had any reason not to use his assets for present needs as they arose. John's lack of notice of Kathleen's action supports the conclusion that the transfers were not made with fraudulent intent.

Although the state of Wisconsin recognizes the importance of a parent's obligation to support his child, it has not given courts the power to overrule otherwise valid transactions in favor of child support. In the absence of any specific evidence demonstrating John's actual intent to avoid those child support obligations, the transfers in question cannot be set aside.

Upon the foregoing which constitute my findings of fact and conclusions of law, it is hereby

ORDERED, that the complaint in this proceeding is hereby dismissed.