WHITMAN, Appellant, v. WHITMAN, Respondent.

*February 28—April 11, 1967.*

344

For the appellant there were briefs by *Bollenbeck, Patterson, Froehlich, Jensen & Wylie* of Appleton, and oral argument by *Edward R. Bollenbeck* and *A. Gerard Patterson.*

For the respondent there was a brief by *Hoeffel, Coughlin & Bayorgeon* of Appleton, and oral argument by *Patrick F. Coughlin.*

CURRIE, C. J. One of defendant's principal assets is 95 shares of capital stock of Mauna Loa Corporation (hereinafter "Mauna Loa") valued by the trial court at $800 per share or $76,000. The only portion of the final judgment attacked by plaintiff-appellant on this appeal is the valuation of the Mauna Loa stock. Plaintiff accepts the trial court's determination that one third of defendant's net estate is a fair award to have been made to her as a division of the estate.

Plaintiff does not request that this court make a different determination of the value of the Mauna Loa stock but asks that this court remand the cause to the circuit court for a new trial on the issue of defendant's net worth. Our review of the evidence satisfies us that the trial court's finding of the value of Mauna Loa stock to be $800 per share is not against the great weight and clear preponderance of the evidence. Therefore, if there is to be any remand for a new trial on the issue of defendant's net worth, it necessarily must be grounded on the exercise of our discretion in the interest of justice as authorized by sec. 251.09, Stats.

Mauna Loa is a family holding company incorporated under the laws of Delaware by the Whitman family about thirty years ago. There are presently 538 shares of its stock outstanding of which defendant owns 95 shares. Wendell Whitman, defendant's brother, owns 107 shares. The remaining 336 shares are owned by defendant's father and mother. Wendell is the president and defendant the secretary-treasurer of the corporation. Each receives a salary of $12,000 per year from the corporation.

At the hearing on January 28, 1965, one Pusch, a certified public accountant and a member of an accounting firm retained by Mauna Loa principally for the purpose of preparing its income tax returns, was called by plaintiff to testify as to the nature of the assets of Mauna Loa. He prepared a balance sheet of the corporation for the purpose of his testimony from notes and records in his possession. In testifying he refreshed his memory from the balance sheet. The balance sheet reflected "Investments-Securities" at $251,045.78, which figure represented original cost and not market value as of January 28, 1965. It also reflected "Land, Buildings Less Accumulated Depreciation" at $778,547.82. Pusch did not know what real estate comprised the holdings of Mauna Loa except that the J. C. Penney Building in Appleton was one of the properties owned. He apparently knew nothing about the leases covering such properties.

Pusch testified that the rent and income from securities of Mauna Loa for the fiscal year ending August 31, 1964, was $167,000 which was apportioned $89,000 to dividends and interest from securities and $78,000 to gross rentals from real estate.

The efforts of plaintiff's counsel to elicit any information from Pusch as to the identity of the stocks, bonds, and real estate owned by Mauna Loa proved unavailing. Defendant's counsel then made Pusch a witness for defendant and qualified him as an expert on the valuation of capital stock of a closed holding corporation. Using a

formula of valuation based on both the book value of $1,603.80 per share and annual earnings of $151.85 per share, whereby capitalization of earnings was given a weight of two and book value a weight of one, he arrived at a tentative per share value of $1,142. He deducted 45 percent from this figure because defendant's shares represented a minority interest, there was no established market for the stock, no dividends were being paid, and because of the "unusual marketability when you have a family of stockholders." This left a balance of $628.10 per share which Pusch "rounded off" to $600 per share as his appraised value of defendant's shares.

Defendant offered testimony of two sales of six shares each of Mauna Loa stock at $800 per share. Defendant's brother's wife owned six shares at the time she was divorced from Wendell approximately two years before. She was ordered by the court to sell her six shares to Wendell at a price of $800 per share which she did. Plaintiff also owned six shares and, when hard-pressed for money in 1963, she sold her six shares to defendant's father also at a price of $800 per share.

The evidence with respect to the circumstances of the first of these two sales is so meager that we consider it of little weight. This apparently was also the view of the trial judge in admitting evidence of this sale into evidence in view of his comment that it was received "for what it was worth." The second sale by plaintiff to her former father-in-law does not meet the test of having been made by a willing seller not obliged to sell to a willing buyer not obliged to buy.[1] The evidence discloses that at the time plaintiff was hard-pressed financially and desperately needed money. Furthermore Pusch testified in

---

[1] See *Estate of Gooding* (1955), 269 Wis. 496, 502, 69 N. W. (2d) 586; *Kansas City Star Co. v. Department of Taxation* (1959), 8 Wis. (2d) 441, 452, 99 N. W. (2d) 718; Rev. Rul. 59–60, 1959–1 Cum. Bull. 237, 241, 242.

effect that no one outside of the Whitman family would purchase a minority interest in Mauna Loa. In a situation such as this, where it was within the power of the Whitman family to control the selling price by refusing to buy at any figure other than an arbitrary one fixed by themselves, the purchase price per share paid by the senior Whitman for plaintiff's six shares is not conclusive on the share value of Mauna Loa stock.[2]

In summary, we fully agree with the trial court's comment in the memorandum decision, "There was evidence introduced bearing on the value of this stock but it was very unsatisfactory and not too helpful."

Evidence which would have been very helpful in arriving at the value of defendant's Mauna Loa stock would have been a list of the stocks and bonds making up the investment securities of the corporation, a list of the particular parcels of real estate owned by it, and the market values of both classes of assets.

Fletcher, one of the leading authorities on corporation law, states:

"The fair value of a corporate stock as of any given time where there is no established market value is nearly always a difficult problem. Where the law does not imperatively require the determination of value from the market value alone, there is no exclusive test or measure of actual value. In establishing the market value of stock in a close corporation the value of the net assets of the company has an important bearing."[3]

Some authorities state that one of the elements to be considered in determining the market value of capital

---

[2] See *Estate of Gooding*, footnote 1, *supra*, at page 505.

[3] 14 Fletcher, Corporations (1966 rev. ed.), p. 1003, sec. 7005. See also Anno. 117 A. L. R. 143, 153. The Internal Revenue Service accords the fair market value of the underlying assets of a closely held investment or real estate holding corporation greater weight than any of the other customary yardsticks of appraisal. Rev. Rul. 59–60, 1959–1 Cum. Bull. 237, 243.

stock in a close or family holding corporation is "book value." [4] However, "book value" is not any arbitrary value that may be entered on the books of a corporation but rather is value predicated on the market value of the assets of a corporation. [5]

Although market value of the assets of a family holding corporation such as Mauna Loa is one of the factors to be considered in appraising the value of its capital stock it is not conclusive. As this court pointed out in *Estate of Gooding*, [6] where a minority stockholder is in no position to force a liquidation, a determination of fair market value cannot be based on liquidating value.

At the hearing on division of the estate plaintiff sought to obtain a list of the securities and real estate holdings owned by Mauna Loa but was unsuccessful. Although defendant is secretary-treasurer of Mauna Loa he was unable in his testimony to supply this information, claiming he had previously turned the books and records of the corporation over to his brother Wendell. A *subpoena duces tecum* was issued requiring Wendell to appear and bring with him the books and records of the corporation but the process server was unable to locate him. Plaintiff's counsel requested from the trial court the issuance of an order authorizing the inspection of Mauna Loa's Wisconsin income tax returns. This request was denied on the ground that the corporation was not a party to the action. A request was also made that Pusch be required to bring from his accounting firm's office copies

[4] Anno. 117 A. L. R. 143, 153; *Newell v. Commissioner of Internal Revenue* (7th Cir. 1933), 66 Fed. (2d) 102, 103; *Holmes et al., Executors* (1931), 22 B. T. A. 757, 759.

[5] *Townsend v. La Crosse Trailer Corp.* (1948), 254 Wis. 31, 36, 35 N. W. (2d) 325; *Piedmont Publishing Co. v. Rogers* (1961), 193 Cal. App. (2d) 171, 14 Cal. Rptr. 133; *Hollister v. Fiedler* (1952), 22 N. J. Super. 439, 92 Atl. (2d) 52.

[6] Footnote 1, *supra*, at pages 517, 518.

of Mauna Loa's income tax returns. The latter request was denied for the same reason as the request for authority to inspect the original income tax returns.

We deem that the interest of justice requires a remand and a new trial on the issue of defendant's net worth so that such a list may be obtained and made a part of the record, and expert testimony presented as to the market value of the assets listed.

The principal reason for concluding that probably a miscarriage of justice has occurred in determining the value of defendant's Mauna Loa stock is that such corporation has been in existence for approximately thirty years and during that period the general trend in market value of corporate stocks and urban real estate has been decidedly upward. Therefore, we consider it more than likely that the market value of both the corporation's stocks and real estate, as of the time the divorce was granted, was greater than the values carried on the corporation's books which are based on original cost.

*By the Court.*—That part of the final judgment which adjudicated a property division is reversed and cause remanded for further proceedings consistent with this opinion. All other portions of the judgment are affirmed.

HANSEN, J., took no part.