WAHL, Respondent, v. WAHL, Appellant.*

*No. 304. Argued June 3, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 651.)

* Motion for rehearing denied, without costs, on September 6, 1968.

512

For the appellant there were briefs by *Wahl & Riley* of Eau Claire, attorneys, and *E. L. Wingert* of Madison of counsel, and oral argument by *Mr. Wingert*.

For the respondent there was a brief by *Doar, Drill & Norman* of New Richmond, and oral argument by *James A. Drill*.

HANLEY, J. Five issues are presented on this appeal:

(1) Are the trial court's findings as to the value of defendant's estate supported by the evidence;

(2) Is the award to the plaintiff as a division of property so excessive as to constitute an abuse of discretion;

(3) In making a final division of defendant's estate, did the trial court err in not considering the income tax consequences of the division;

(4) Is the award of alimony and support money excessive; and

(5) Is the amount of fees and disbursements which defendant was ordered to pay to plaintiff's attorneys excessive.

1. *Findings as to Assets and Values.*

The trial court found the value of defendant's assets to be as follows:

| | |
|---|---:|
| Equity in home on Altoona Lake | $23,835 |
| Furnishings in above home | 7,000 |
| Equity in home at Eau Claire | 11,499 |
| Furnishings in above home | 1,000 |
| Miscellaneous securities | 12,100 |
| Life insurance, cash value | 2,294 |
| Automobile | 3,000 |
| 1/3 interest in land in Bayfield county | 750 |
| 40 acres of land in Altoona | 1,200 |
| Lot on Altoona Lake | 8,000 |
| Joint checking and savings accounts | 2,773 |
| Interest in Wahl and Riley partnership | 16,000 |
| 1/2 interest in three parcels of land designated 15–1062C, 15–1061B and 15–1061F | 67,900 |
| Stock in University Heights of Eau Claire, Inc. | 251,347 |

| | | |
|---|---|---:|
| | Total | 408,698 |
| | Less debts | 5,900 |
| | Net estate | $402,798 |

The court found the total value of the assets to be $408,698. The defendant challenges that finding on the basis that the court improperly valued his stock in the University Heights of Eau Claire, Inc., at $251,347, his one-half interest in three parcels of land designated 15–1062C, 15–1061B, and 15–1061F at $67,900, and his interest in the law partnership at $16,000.

Defendant owns 50 percent of the stock in University Heights of Eau Claire, Inc., which was organized in 1961 with $10,000 of capital and is engaged in real estate development. The court found defendant's stock interest to be worth $251,347 without breaking down the means of arriving at that figure. It is apparent the court considered that the stock of the corporation was worth as much as its assets, less its liabilities.

In *Whitman v. Whitman* [1] the court discussed the important factors in determining the value of stock of a closely held corporation. In that case the court determined that the most important factor to consider was the market value of the assets owned by the corporation. In that case the court also cited, with approval, the rule set forth by the Internal Revenue Service in Rev. Rul. 59–60, 1959–1 Cum. Bull. 237, 242, sec. 5(a) of that ruling reads as follows:

"Earnings may be the most important criterion of value in some cases whereas asset value will receive primary consideration in others. In general, the appraiser will accord primary consideration to earnings when valuing stocks of companies which sell products or services to the public; conversely, in the investment or holding type of company, the appraiser may accord the greatest weight to the assets underlying the security to be valued."

Testimony as to the value of the net assets of the corporation was the only evidence presented bearing on the value of the stock apart from defendant's estimate that in 1966 the stock was worth $50,000. Robert Anderson, a highly qualified real estate appraiser, testifying on behalf of the plaintiff, assessed the fair market value of the corporation's realty at $377,250. Arthur M. Best, also a qualified real estate appraiser and also testifying for the plaintiff, assessed the real estate values at $416,680.

The trial court, if it accepted the values contended for by the plaintiff on each individual parcel, as it appears to have done, assigned values to the parcels totaling $397,250. The trial court apparently assessed the non-real estate property of the corporation at its value as stated in the balance sheet filed by the corporation in connection with its 1966 federal income tax return.

The defendant does not complain that this method of valuing the stock is inappropriate, nor could he be heard

[1] (1967), 34 Wis. 2d 341, 149 N. W. 2d 529.

to so complain since he offered no independent evidence of its value. His evidence was that the tax picture would prevent the defendant from realizing that amount because of the built-in capital gains tax if the realty is ever sold. On this point Richard S. Irwin, a certified public accountant who prepared the income tax returns for University Heights of Eau Claire, Inc., testified that if all of the corporation's real estate were to be sold in one year for $377,250, federal income taxes in the amount of $153,240 and state income taxes in the amount of $25,050 would be payable, for the cost basis of the land was approximately $20,000.

Whether the trial court's valuation of the stock is against the great weight and clear preponderance of the evidence is, of course, the precise legal question here involved. The answer to this question depends upon what conclusions can legitimately be drawn from the evidence submitted and not upon the possible effect of evidence not before the court. In *Whitman* the evidence of the value of the stock of a family holding corporation was the testimony of an accountant who prepared the corporation's income tax returns that, using a formula of valuation based on both the book value and the annual earnings from which he obtained a tentative value for the stock and deducting from this figure 45 percent because the corporation was closely held and the shares in question represented a minority interest, the stock was worth $600 a share. In addition, two sales were made in which the selling price was $800 a share; but the court considered one sale not to have been made at arm's length and found the evidence with respect to the circumstances surrounding the second meager. Despite this and despite the fact that no evidence of the net value of the corporation's assets was presented, the supreme court held the trial court's finding that the stock was worth $800 a share not to be against the great weight and clear preponderance of the evidence. Here, the complaint is that

too much weight has been accorded the net asset value. Since the testimony as to the net asset value is undeniably important here, the probative value of the evidence that the tax considerations should lower the value must be examined. In view of the current land values, the trial court was entitled to disregard the defendant's evidence that his stock was worth $50,000. There was testimony that the corporation's cost basis for the land was low and that sizable gains taxable at ordinary income rates would be realized when the land is sold. Irwin's figures are presumably an attempt to quantify the tax impact on the value of the shares but they are of little value because there is no indication the corporation plans to sell all of its real estate in a single year.

While it may be that all of the real estate may eventually be sold, it can be safely assumed that the most disadvantageous method from the tax standpoint will not be used. Then, too, it may not sell, but lease, some of its property which it seems already to have done.

The question heretofore unasked that naturally arises is how much knowledge of the valuation of close corporation stock must the trial court be presumed to know in advance of testimony. We think that as a prerequisite to a claim of a finding of a fair market value of close corporation stock is against the great weight and clear preponderance of the evidence, a party must present to the trial court evidence of the stock's market value, together with the method or methods of arriving at that value. Here the defendant offered little evidence on that issue.

The defendant cites *Wetzel v. Wetzel* [2] in support of his contention that it was error for the court to give no consideration to the tax consequences of selling the University Heights of Eau Claire, Inc., stock. That case did not involve a dispute regarding the value of the assets but rather involved the question of the tax consequences of the division of those assets. In *Wetzel, supra,* at page

[2] (1967), 35 Wis. 2d 103, 150 N. W. 2d 482.

110, the court said: "We think in making a division of property or in granting alimony or both that consideration should be given to the tax consequences."

The divorce judgment in this case awards the stock to the defendant and does not require the sale or transfer of any of the stock of University Heights of Eau Claire, Inc. In *Wetzel*, the award was a taxable event. We are reluctant to consider the theoretical tax consequences of the sale which is neither necessary nor probable, but purely conjectural. Accordingly, we find the trial court's finding as to the stock value of University Heights of Eau Claire, Inc., not against the great weight and clear preponderance of the evidence.

Defendant's contention that the parcel known as 15-1061G, owned by the corporation, has been overvalued by $20,000 stems from the possibility that in the future access to the parcel from Highway 12, a major traffic artery, may be impaired. The parcel in question contains 1.18 acres, is almost triangular in shape, and is bounded on the south by Highway 12, on the west by land condemned for purposes of extending a street, and on the east by Hendrickson road. At the present time, there is no direct access from the parcel to Highway 12 because access to the highway is controlled. However, there is access to Hendrickson road, which intersects Highway 12. Although the court did not make a separate finding as to the value of individual real estate parcels owned by the corporation, the trial court appears to have adopted the valuation figures suggested by the plaintiff, as we have pointed out earlier. This would place the value of the instant parcel at $45,000. Plaintiff does not dispute that this is what occurred and argues in her brief that such a finding is not against the great weight and clear preponderance of the evidence. Defendant contends that the testimony which supports the $45,000 valuation is based on an erroneous assumption concerning future access to the parcel.

Robert Anderson testified that in his opinion the parcel was worth $25,000. He based his testimony on the assumption that the parcel had access to Hendrickson road and that Hendrickson road would continue to have access to Clairemont avenue (Highway 12); he also stated that if such access were removed, it would affect his estimate of value, but he did not know how much.

Arthur Best testified that the parcel was worth $45,000. He indicated that he talked with city and state officials who indicated that access from the parcel would be by way of two service roads, one on the north end of the parcel and the other on the south end, both leading to the proposed new street. In his opinion, if such access becomes available, any plan to block access from Hendrickson road to Highway 12 would not affect the value of the parcel.

Marvin Schaeffer, an engineer for the state highway commission, testified that the state had plans to widen Highway 12 and that the city of Eau Claire was planning to construct a street to the west of the parcel for which the land had already been condemned. In the event the street was constructed, the state planned to close off the access from Hendrickson road to Highway 12. In that event, his testimony was that the parcel would have access to the proposed new street by way of Hendrickson road. He further testified that the planners at one time considered connecting Hendrickson road with a service road leading to the proposed street, which road would abut the south end of the parcel, but that that was no longer being considered.

The defendant contends that when the proposed new street is completed, access from the parcel to Highway 12 will be circuitous and not readily apparent to motorists who use Highway 12 and that it is common knowledge that such limited access is destructive of value and that the potential loss of access can have the same effect. There was testimony that negotiations with the Standard

Oil Company were broken off when the company learned that access from Highway 12 at Hendrickson road might be cut off.

In our opinion, the trial court's valuation of the parcel was not against the great weight and clear preponderance of the evidence. Whether or not the proposed new street would be constructed is a matter of some doubt on the record; and, while the very possibility of loss of access may lessen the value of the parcel, Best's testimony that certain other access points, if provided, would prevent the loss of value supports an inference to the contrary. Defendant's position is that Best was mistaken in his assumption about what access points were going to be provided. However, at the time this case was tried, no one was entirely sure what would be done concerning access. We think the trial court could have considered that Best's testimony was a fair valuation based on what he conceived would be the access points and that the likelihood was that the access provided would be as satisfactory.

In situations like this where there is a conflict, it is the duty of the trier of fact to determine the credibility of witnesses and resolve the conflict in the testimony.[3]

Defendant contends that the finding that his interest in his law partnership was worth $16,000 is not supported by the evidence. The trial court stated that such figure included "capital investment, 1966 drawing account, 1967 accrued equity and his one half of accounts receivable." The only evidence concerning the value of partnership assets came from the defendant himself. His testimony was that he and his partner each had a capital account of $3,000 and that the office equipment, furniture, fixtures, and library had a book value of

---

[3] *Weeden v. Beloit* (1966), 29 Wis. 2d 662, 666, 139 N. W. 2d 616.

$6,000. He did not know the value of the firm's accounts receivable, but when pressed on cross-examination thought they were worth more than $1,000, but less than $25,000. There was also $3,000 left undrawn from his drawing account as it stood in 1966. We think the valuation is supported by the evidence. The trial court apparently considered that the accounts receivable were considerably higher than the $1,000 figure. Defendant testified that he could ascertain whose bills were unpaid and thus arrive at a value for accounts receivable, even though they were not carried on the partnership's books. Under the circumstances, since the information was not available to the plaintiff, defendant should not be heard to complain.

## 2. *Division of Estate.*

The judgment awarded to the plaintiff the following:

| | |
|---|---:|
| Home and furnishings on Altoona Lake | $30,835 |
| Automobile | 3,000 |
| Checking and savings accounts | 2,773 |
| All of defendant's securities except the University Heights of Eau Claire, Inc., stock (including 250 shares Sargent Industries which defendant no longer owned, having sold it to raise tax money) | 12,100 |
| Four acres in Altoona | 1,200 |
| Lot on Altoona Lake (Rosholt Lane) | 8,000 |
| Undivided one-half interest in parcels 15–1062C, 15–1061B and 15–1061F | 67,900 |
| Cash, to be paid in 10 annual installments without interest, to be evidenced by a note and secured by a lien on defendant's University Heights stock | 41,000 |
| | $166,808 |

The judgment awarded to the defendant the following:

| | |
|---|---|
| Home and home furnishings on Roosevelt Avenue | $12,499 |
| Life insurance, cash value | 2,294 |
| Land in Bayfield county | 750 |
| Interest in Wahl & Riley partnership | 16,000 |
| Stock in University Heights of Eau Claire, Inc. ($251,347 less lien of $41,000) | 210,347 |
| | $241,890 |
| Debts | 5,900 |
| | $235,990 |

Sec. 247.26, Stats., provides that the court in dividing and distributing both the real and personal estate of the husband between the parties should give "due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case."

The statute clearly indicates that granting a property division is a matter lying within the discretion of the trial court. Therefore, the question arises as to whether the amount awarded to the plaintiff was so excessive as to constitute an abuse of that discretion.

As a general rule this court has often stated that "an award of one third of the husband's net estate to the wife is a proper starting point, subject to increase or decrease according to circumstances." [4]

In *Kronforst v. Kronforst* [5] the court set forth four factors which would warrant granting an award of more than one third to the wife. These are a long period of marriage, complete lack of any separate estate in the

[4] *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 155 N. W. 2d 130; *Strandberg v. Strandberg* (1967), 33 Wis. 2d 204, 207, 147 N. W. 2d 349.

[5] (1963), 21 Wis. 2d 54, 61, 62, 63, 123 N. W. 2d 528.

wife, coupled with her inability to support herself, a low award of permanent alimony, and break-up of marriage due to husband's wrongful conduct.

In the instant case three of these four factors are present which would justify granting a more favorable division to plaintiff than one third. The one factor militating against such increase is that substantial permanent alimony has been granted plaintiff. The parties have been married twelve and one-half years; plaintiff has borne and raised four children; substantially all of the property was accumulated during the marriage. In *Spheeris v. Spheeris* [6] this court said that a wife who had given birth to and raised three children during a ten-year marriage "has made a significant contribution to the acquisition of the family's estate."

Mrs. Wahl has no separate estate and to require her to find employment to support herself would be to deny the children the family life and parental guidance to which they are entitled under the circumstances.

The misconduct of the defendant in this case is flagrant and contributes to the justification of an award of more than one third of the property. The evidence indicates more than misconduct on the part of the defendant.

In view of the above factors we consider that the amount of the estate awarded to plaintiff of approximately 40 percent is not an abuse of discretion.

3. *Income Tax Consequences of Division of Property.*

The defendant contends that the trial court ignored the tax consequences of its award of his interest in three parcels of land to the plaintiff. Defendant's cost basis for his undivided one-half interest is $8,500. These parcels were appraised by Mr. Anderson at a total of $135,800 and by Mr. Best at $130,000. The court accepted the higher total figure and found the value of defendant's undivided interest to be $67,900.

---

[6] *Supra,* footnote 4, at page 510.

We agree with the defendant's contention that the award is a taxable event, and the trial court should have considered the consequences in its decision. On remand the trial court is directed to make allowance for the tax impact incurred by defendant because of the capital gain on the transfer of the undivided interest in three parcels of land referred to above. Any allowance granted by the trial court could be provided for by a reduction in the installment payment of $41,000 awarded to the plaintiff with a comparable reduction in the lien on the stock of the University Heights of Eau Claire, Inc.

In 1966, the corporation received a condemnation award of $70,000 from the city of Eau Claire. It also had deferred gains of $23,806 on installment sales. The proceeds of the condemnation award and the installment sales are reflected in the assets of the corporation (cash, notes receivable, and securities) and were fully reflected in the court's valuation.

Defendant argues that the court should have reduced the net value of the corporate assets by $48,000 because of the potential income tax liabilities. The defendant himself testified that with respect to the $70,000 award the tax could be completely avoided if the amount of the award is reinvested in similar property within one year following the award. There is no evidence to indicate the corporation could not, or did not, take advantage of this opportunity.

In the *Spheeris Case, supra,* this court held that contingent liabilities that may never be paid or that may be paid only in part need not be deducted in determining net worth.

We conclude the trial court was correct in not considering allowances on these items.

### 4. *Permanent Alimony and Support.*

The defendant claims that the award of $125 per month for the support of each of four children and the further sum of $500 per month alimony is excessive and punitive

in nature. Defendant's first contention is that when the family lived together their expenditures were $600 per month. The record does not support this statement. On the contrary, the record shows that from 1962 through 1966 the defendant's average income was $28,200. The income for the most recent year was $39,662.15. It is hard to comprehend how a family of six maintaining two homes valued at $30,000 and $28,500 respectively, plus furnishings, and living in the manner of a professional person in the community, could do so on $7,200 per year.

Defendant also contends the plaintiff is capable of supporting herself. We think because of the earning capacity of the defendant it would be an abuse of discretion for this court to require the mother to take employment when her time should be devoted to providing a proper family life for her four children.

Lastly, defendant contends the provision requiring defendant to support his children through age twenty-one or through college indicates that the judgment is punitive. Plaintiff concedes that the trial court exceeded its power inasmuch as the support award might have the effect of compelling payments after a child reaches majority.[7] Plaintiff consents to a modification of the judgment to terminate the support obligation for each child when the child attains the age of twenty-one.

With respect to the alimony, this court held in *Knutson v. Knutson* [8] that an award of $1,000 alimony, coupled with a substantial property division where the defendant, a physician, had earned $46,000 in the year preceding the divorce, did not constitute an abuse of discretion. We believe the alimony award and the support award as modified do not constitute an abuse of discretion.

Defendant also contends that the award of attorney fees and disbursements is excessive. He also points out that the trial court failed to deduct the amount awarded

[7] *O'Neill v. O'Neill* (1962), 17 Wis. 2d 406, 117 N. W. 2d 267.
[8] (1961), 15 Wis. 2d 115, 111 N. W. 2d 905.

for fees and disbursements in computing his net estate. The matter of allowance of attorney fees is within the discretion of the trial court and unless the court has abused its discretion, its determination will not be upset on appeal.[9] In *Spheeris v. Spheeris* [10] it was indicated, however, that the husband cannot be compelled to pay the entire amount of either the attorney fees or disbursements. The record here is unclear as to whether the award had the effect of so compelling him. Under the circumstances, on remand the trial court should be directed to review the award of attorney fees and disbursements in order to make certain the defendant is only required to make a contribution toward them.

*By the Court.*—The part of the judgment which fixes the property division and the part of the judgment which fixes attorneys' fees and disbursements are reversed and cause is remanded for further consideration not inconsistent with the opinion on file herein. The part of the judgment which fixes support is modified and, as so modified affirmed. In all other respects the judgment is affirmed. No costs are to be taxed in this court.

CONNOR T. HANSEN, J., took no part.

The following memorandum was filed September 6, 1968.

PER CURIAM (*on motion for rehearing*). The second sentence of the first paragraph on page 524 of *Wahl v. Wahl,* ante, p. 510 is changed to read as follows:

". . . On remand the trial court is directed to make allowance for the tax impact incurred by defendant because of the gain on the transfer of the undivided interest in three parcels of land referred to above. . . ."

Motion for rehearing is denied without costs.

---

[9] *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 158, 138 N. W. 2d 185; *Julien v. Julien* (1953), 265 Wis. 85, 60 N. W. 2d 753.

[10] *Supra,* footnote 4.