DEAN, Plaintiff-Respondent, v. DEAN, Defendant-Appellant.

Supreme Court

No. 76–418. Submitted on briefs January 31, 1979.— Decided February 27, 1979.
(Also reported in 275 N.W.2d 902.)

858

For the appellant the cause was submitted on the brief of *Steven I. Cohen* and *Cohen, Grant, Zuidmulder, Naze & Gazely, Ltd.,* of Green Bay.

For the respondent the cause was submitted on the brief of *Robert L. Bittner* and *Bittner, Petitjean, Hinkfuss & Sickel* of Green Bay.

COFFEY, J.   Russell E. Dean, respondent, commenced a divorce action against Buena L. Dean, appellant, alleging cruel and inhuman treatment. The complaint specified that for a period of 8 years prior to the commencement of the action the respondent had been denied sexual relations; further, the appellant refused to socialize with Mr. Dean's friends, business acquaintances and mother. Additionally, it was alleged that Mrs. Dean had on one occasion attempted suicide and has threatened to take her life on numerous occasions as well as informing the respondent she no longer loved him and wanted a divorce. The appellant filed an answer and counterclaim, subsequently withdrawn, and on February 19, 1976 Mr. Dean was granted by default an absolute divorce.

A trial was held to resolve the alimony question and property division and the court's written decision was entered on July 22, 1976 which was supplemented 3 months thereafter. The court entered its findings, conclusions and judgment which were amended on the 18th day of January, 1977 *nunc pro tunc* as of the date of the divorce and, at the same time, the court denied the appellant's motion for appeal costs and fees.

At the time of the divorce, the parties had been married for almost 32 years; the respondent being 56 and the appellant being 52 years of age. Their five children had all attained majority at the time of the divorce. Prior to the marriage, Mrs. Dean was employed as a secretary and then continued this type of work in her husband's busi-

ness for the next 6 years, including preparing the account statements. Mr. Dean is the sole shareholder in a Brown County wholesale beer distributorship known as Dean Distributing Company.

During the trial and prior to the withdrawal of her answer and counterclaim, the appellant's attorney elicited testimony regarding the existence of an intimate-social relationship between Mr. Dean and his present part-time bookkeeper, Mrs. Betty Mayer. Mrs. Mayer, a widow, began working for the Dean distributorship in 1965 and allegedly the relationship with her employer flourished during the late 1960's and early 1970's and at that time the Dean marriage became "terribly strained." The appellant contends that Mrs. Mayer was a willing participant in the respondent's plan to divest himself of certain assets for the purpose of avoiding an equitable division of the marital estate. The appellant established to the trial court's satisfaction that Mr. Dean and Mrs. Mayer did in fact commingle their personal assets.

One of these assets is the Kelley Lake property purchased by Dean in November of 1971. At that time, Mrs. Mayer and Dean purchased parcels of lake real estate, Mayer acquiring hers for $1,250.00 and he the adjoining lot for $3,400.00. Mrs. Mayer previously owned a cottage on the lake. Despite testimony that Mrs. Mayer had paid Dean $3,400.00 in cash for his adjoining property, the court found that Dean had in fact deeded the property to the bookkeeper without consideration. Mrs. Mayer claimed that she paid for the land from dividend and pension checks she had accumulated from her late husband's employer. A representative of the bank testified that the endorsement on these checks reflected that they were deposited regularly within days of receipt by the widow.

The second asset the court found to have been wrongfully withdrawn from the marital estate was a $5,000 cashier's check issued to Russell Dean. The court concluded this money was acquired during the Dean mar-

riage and could not be removed from the marital estate, depriving the estate of its funds, without proof that legal consideration passed from Betty Mayer to Russell Dean. In spite of testimony to the contrary from Dean and his bookkeeper, the record is void of proof that she had given Dean the money for the $5,000 check used to build a storage barn on the Kelley Lake property.

Even though Mrs. Mayer's Brown County Savings & Loan passbook reflected regular monthly deposits of $150 to $250, the appellant sought to establish that Mrs. Mayer's savings, totalling $10,438.70, was a result of "gifts" from Mr. Dean. This new account was started at the same time Mrs. Mayer had an existing bank account with the Kellogg Bank reflecting a balance of $741.17. Testimony revealed Mrs. Mayer had a third account with the Green Bay Savings & Loan and she closed the same at the time she retired the mortgage on her residence. Mrs. Mayer stated the new Brown County Savings & Loan account was made possible by her monthly deposit of salary, pension, dividend checks and accumulated interest over a four year period. Further, the mortgage on her home had now been satisfied. The Kellogg bank account showed a history of withdrawals while the new savings account had never been used for that purpose. The appellant contends that the lack of any withdrawal activity from the savings and loan account indicates that she is not the true owner when weighed against the evidence that during this period of time when she accumulated the $10,438.70, she was granted a $6,000 loan from the Kellogg Bank and a $2,000 loan from her part-time employer, Frank Cowles, and she redeemed a number of Series E Savings Bonds. Furthermore, during this period Mrs. Mayer bought other U. S. Savings Bonds with money from her checking account.

Further, the respondent allegedly used his mother, Mrs. Mildred Dean, in his attempts to divest himself of marital assets. Mr. Dean testified to a $6,000 liability

evidenced by a promissory note payable to his mother. The note was reportedly executed in January of 1972 as evidence of past considerations and cash transfers between the mother and son. The respondent's explanation was not to the satisfaction of the court. Having found the respondent unable to identify or trace these funds, Judge Nier denied the $6,000 liability as a legitimate claim against the marital estate.

Mrs. Mildred Dean testified that she had made gifts of certain real estate to her son as she was unable to maintain the property and pay the taxes. Additionally, the respondent's mother stated that she had contributed monies for the education of the five Dean children and these funds were commingled in Dean's personal account of $15,831.31 on deposit at the West Bank in 1972. The elder Mrs. Dean testified that after the divorce action was commenced, she requested the return of the loaned "educational money." Mr. Dean closed the West Bank account asking for two cashier's checks, one payable to Mrs. Mildred Dean in the sum of $11,000, and the other for $5,000, which included the account interest, in his name. The trial court concluded that the respondent's $5,000 check was used to pay for the storage barn built on the Kelley Lake property.

The appellant attempted to prove the $11,000 loan repayment was not supported with testimony of past gifts and considerations. In support of this argument, she stated a $3,700 house trailer was purchased by Mrs. Mildred Dean solely for her son's use. The trial court rejected the appellant's contention and concluded that Mrs. Mildred Dean was the lawful owner of the house trailer, having used part of the $11,000 cashier's check in payment.

The appellant also failed to persuade the court as to the allegation that her husband, during 1974 and 1975, took unreasonably expensive vacations, in spite of the fact he admitted that on one of these trips, he "blew" $3,000 which he understood was part of the marital assets.

The record reflects that each party to this action produced an expert economist who testified to the value of Mr. Dean's ownership interest in the beer distributorship. Buena Dean's expert valued the business at the $158,000 book value; the respondent's appraiser reached an opinion that the enterprise was worth $110,000, based upon the capitalization of past earnings. Their disparity in opinions reflects disagreement as to whether the business is of a high risk nature and whether the capitalization of past earnings should include the losses suffered in prior years. The experts testified as to the liquidated value of the closed corporation as of February, 1975. The appellant claims it was error for the trial court to assess Mr. Dean's interest at $134,000 and states that the figure of $140,000 reflecting liquidation value more accurately represents the value of the closed corporation. She claims the higher liquidated value figure is the appropriate valuation in light of the company's extensive liquid assets.

The court's findings established the value of the marital estate at $265,419.00. Mrs. Dean was awarded $106,167.-60, or a 40% division. The 40% division is broken down into immediate and deferred payments as follows: she was to immediately receive the Dean residence, its furnishings, a car, the couple's Wheeler Lake cottage and its furnishings and a $2,749 savings account, totalling $56,739; the remaining amount in excess of $49,000 was to be paid in 120 months in accordance with federal tax regulations.

The trial court rounded the balance of the property division to $49,460, provided for an initial payment of $500 and $400 monthly thereafter until the judgment is fully satisfied. This payment formula was designed to take a total of 120 months which complies with federal tax regulations allowing for tax free installment property divisions if made within a period of ten years. The unpaid balance interest rate was set at 7% per annum and is a lien against the respondent's warehouse leased to his corporation. The trial court also granted the defendant

limited alimony of $750 monthly for a period of ten years. Additionally, the respondent was to pay $5,000 towards the appellant's attorney's fees and $1,300 for her disbursements as well as the $621.50 bank fees incurred for the use of the cancelled checks and banking records used at trial.

The verbal order of January 18, 1977, formalized by the court's written order of January 31, 1977, denied the appellant's request that the respondent pay her reasonable appeal costs and disbursements. The order also denied appellant's request that the respondent pay the 1976 real estate taxes on the residence given to Mrs. Buena Dean, but did provide that the respondent pay $\frac{7}{12}$ths of the 1976 real estate taxes on the residence and lakeside cottage.

The issues on appeal are:

1. Did the trial court err in failing to include the following as assets of the marital estate:

(a) the $10,438.70 savings account held in the name of Betty Mayer?

(b) the payment of a note to the respondent's mother in the amount of $11,000? and

(c) money expended for vacations taken by the respondent following the commencement of the divorce action?

2. Did the trial court err in refusing to order an independent appraisal of:

(a) the Kelley Lake property transferred by the respondent without consideration and valued in the marital estate at its original purchase price of $3,400? and

(b) the $5,000 the respondent contributed without consideration to Mrs. Mayer for the construction of a storage facility on the Kelley Lake parcel?

3. Did the trial court err in denying the appellant's motion to join Mildred Dean and Betty Mayer as parties defendant?

4. Did the trial court err in finding the value of Dean Distributing Company at $134,216?

5.  Did the trial court abuse its discretion in the property award to the appellant in the following respects:

(a) the disputed implications of a 120-month installment pay out?; and

(b) a division of only 40 percent?

6.  Did the trial court abuse its discretion in awarding alimony to the appellant in the amount of $750 monthly and for a limited period of ten years?

7.  Did the trial court abuse its discretion in denying appellant's motion for attorney's fees and disbursements to be incurred in bringing this appeal?

*Did the trial court err in failing to include certain assets in the Deans' marital estate?*

The burden of proof is upon the party seeking the inclusion of an asset in a marital estate when this asset is held in the name of a third party. *See: Wahl v. Wahl,* 39 Wis.2d 510, 521, 159 N.W.2d 651 (1968). In the present case the appellant seeks the inclusion of Betty Mayer's personal savings account held in the Brown County Savings & Loan. The appellant relies on the inferences drawn from the following evidence: (1) that Mrs. Mayer had an active bank account at Kellogg Bank when she opened the Brown County Savings & Loan account; (2) that, considering the size of the account which was used for deposits only, $10,498.70, Mrs. Mayer cashed savings bonds and borrowed substantial sums from financial institutions and personal acquaintances; and (3) that there was proof of other transactions between Mrs. Mayer and the respondent as he sought to remove assets from the property division.

The court found Mrs. Mayer's testimony rebutted the circumstantial proof offered by the appellant. Further, the court concluded the size of this account was not suspect in light of the fact that Mrs. Mayer had in the past four to five years a total annual income of $20,000

consisting of $600 a month from Frank Cowles; $500 a month from Dean Distributing; $2,000 a year in pension benefits, plus stock dividends and interest on certain bonds. Additionally, in the court's reasoning she gave a credible explanation for borrowing money for certain investments rather than withdrawing funds from her savings account:

"I never withdraw any money from my savings if I don't have to because I have three children. I know if I borrow it from the bank I'll pay it back but it doesn't always get paid back when you take it out of savings."

The trial court's judgment concluded "there was not one scintilla of evidence to trace money of the plaintiff into that bank account." This court has often noted in regard to divorce actions that:

"The weight of the evidence and the credibility of the witnesses are matters within the province of the trial court as the trier of facts. It is settled law in this state that the findings of fact of a trial court on appeal from a divorce judgment must be affirmed unless contrary to the great weight and clear preponderance of the evidence." *Perrenoud v. Perrenoud*, 82 Wis.2d 36, 42, 260 N.W.2d 658 (1977) [citations omitted].

Despite the financial manipulations by Mrs. Mayer and Mr. Dean as to the Kelley Lake property and the use of the $5,000 cashier's check, there is no evidence to show the trial court's findings were contrary to the great weight and clear preponderance of the evidence. The plaintiff did not attempt to trace the source of the regular monthly deposits into this account, nor was any evidence presented showing that the sum of $10,500 was missing from the Deans' personal assets or the corporation's assets.

The appellant also claims that the respondent's action in repaying $11,000 to his mother was a fraud upon the

marital estate. Again, despite Mr. Dean's deception in divesting himself of certain other assets in order to avoid a property division and the feigned $6,000 promissory note, the trial court concluded that the $11,000 transfer to his mother was of itself unusual when considering the context of his financial dealings. The trial court specifically found the following:

". . . The Court further disallowed a $6,000 note purportedly owed to the mother of plaintiff because plaintiff was too vague as to the how, when and where of the consideration. The Court refused to rescind the payment of $11,000 by plaintiff to his mother because there was no testimony which would have destroyed the legitimacy of the loan that the note was stated to evidence."

The trial court evidently applied the presumption that the note represented an actual debt based upon past consideration. Mrs. Mildred Dean's testimony is not rebutted by the appellant except for the innuendo created by Mr. Dean's misdeeds of withdrawing property and monies from the marital estate. She testified to a history of transactions between herself and her son; (1) seven lots in Allouez, Wisconsin were given to the respondent because of the mother's inability to manage and maintain the property, including the payment of taxes; (2) she supplied the funds in November, 1971 to buy the Kelley Lake property, the deed reflecting ownership in his name; (3) recollection but no records of proof of loans of $1,000 each for the education of her grandchildren; (4) recollection of a $6,000 loan made in the past five years.

As previously noted, it is the responsibility of the trier of fact to determine the question of a witness' credibility. *Perrenoud v. Perrenoud, supra.* In this case, the court found Mrs. Mildred Dean's testimony credible. Despite her age (74) and failing health, Mildred Dean exhibited a good memory, recalling the purchase price of the trailer

as $3,700 when, in fact, it was $3,694. Her testimony regarding the numerous loans she made to Russell Dean for the education of her grandchildren rebuts the appellant's contention that the $11,000 repayment was not supported by legal consideration. Even though the appellant contended that her husband had the exclusive use of the $3,700 house trailer purchased out of the $11,000 cashier's check from his West Bank account, this evidence, standing alone, falls short of the burden of proof required to allow the court to find that he was the lawful owner of the trailer and thus deprived the marital estate of another asset.

In *Caldwell v. Caldwell*, 5 Wis.2d 146, 157, 92 N.W.2d 356 (1958) the court affirmed a trial court finding that the defendant-husband, during the pendency of a divorce action, had transferred over $100,000 in stock to his son. Unlike this case, there was positive proof that the stock transfer did not fulfill the legal requirement of consideration. In *Parsons v. Parsons*, 68 Wis.2d 744, 229 N.W.2d 629 (1975), the court again affirmed the trial court's finding of an improper transfer to avoid property division. In that case the husband "repaid" his mother $5,000 shortly after the divorce action was commenced. In *Parsons*, the alleged debt was not secured by a duly executed promissory note and the uncorroborated testimony of the son as to the existence of a "long standing agreement" to repay his parents was insufficient. In the instant case, contrary to the facts in *Parsons*, there is a promissory note from Russell Dean to his mother, Mildred Dean, evidencing the existence of the $11,000 debt and the mother's testimony corroborated her son's explanation concerning the debt and the terms of the repayment agreement evidenced by the promissory note.

In *Van Wyk v. Van Wyk*, 86 Wis.2d 100, 115, 271 N.W.2d 860 (1978), the court reached a contrary result from *Parsons* and affirmed a trial court's exclusion of a

$5,000 wedding present given by the husband to their oldest daughter. This affirmance was based upon evidence establishing the parties had previously given their son $5,000 upon his betrothal and this court has often stated that questions of fact determined by the trial court will not be overruled unless the finding is contrary to the great weight and clear preponderance of the evidence.

The third asset allegedly squandered from the marital estate took the form of expenditures made by Mr. Dean while vacationing. The appellant claims that Mr. Dean should not be permitted to deplete the marital estate by taking expensive vacations while she was forced to stay in Green Bay. The trial court found that Mr. Dean's vacations and monies spent by him were not so excessive as to be considered expenditures which require a replenishment of the marital estate. The judge noted that merely because a divorce action had been commenced, there was no reason why Mr. Dean could not enjoy a vacation and that vacations are necessary for working people.

The trial evidence shows that Mr. Dean and the appellant vacationed separately in Mexico in 1973 and in 1974 and in 1975 Mr. Dean vacationed without his wife in Hawaii and Florida respectively. In *Parsons v. Parsons, supra* at 750, this court did not comment upon the trial court's failure to include as a marital asset $1,000—$1,500 that the defendant husband spent on an Arizona vacation. A trial court does not commit an abuse of discretion by permitting some expenditure for yearly vacations during the pendency of a divorce. However, the amount expended should always be reviewed, subject to the standards of reasonableness.

Mr. Dean gave the following testimony as to the expenses he incurred during his 1975 Florida vacation:

"*Q.* And it's your testimony that you took this vacation in 1975 with cash that you knew to be assets of the marriage?

"*A.* Right.

"*Q.* And just blew $3,000?

"*A.* Well, might as well; no place to go."

Earlier testimony indicated that Mr. Dean attended dog and horse races while in Florida that year. Despite the flippant nature of Mr. Dean's testimony, we do not deem it an abuse of discretion by the trial court in its failure to include these sums in the marital estate. As to the 1973 Mexican and the 1974 Hawaiian vacation, there was no evidence presented as to Mr. Dean's expenses so no conclusion could be drawn by the trial court.

*Did the trial court err in refusing to order a current appraisal of the Kelley Lake property transferred by the respondent without consideration and valued in the marital estate at its original purchase price of $3,400 for the real estate and the sum of $5,000 representing Dean's 1974 consideration-free storage barn in computing the assets of the marital estate?*

The appellant contends that any and all assets divested by the respondent to avoid marital estate division should be valued at their present value as of February, 1976, the time of the divorce proceedings. The argument relies upon *Caldwell v. Caldwell, supra* at 162 that to do otherwise "would be to reward the husband for his wrongdoing. . . ."

The appellant contends that the court abused its discretion by not granting her motion to have the Kelley Lake property and improvement independently appraised. The court allowed the 1971 purchase price of $3,400 to reflect the value of the real estate; the storage facility, substantially financed by Mr. Dean's $5,000 contribution, was built in November, 1974. The appellant argues without supporting authority in the record that the wrong-

ful investment of Mr. Dean's money in the property and the storage barn represents a hedge against the spiralling inflation of 10 to 14% a year. This hedge resulted in Mr. Dean's overall gain in view of the rising value of this property. The appellant simply seeks to recover the rise in real estate values.

This court has consistently required that assets such as pension and profit sharing rights be valued at their present worth at the time of the divorce decree. *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235; *Leighton v. Leighton,* 81 Wis.2d 620, 261 N.W.2d 457; *Parsons v. Parsons, supra; Pinkowski v. Pinkowski,* 67 Wis.2d 176, 226 N.W.2d 518 (1975). In *Markham v. Markham,* 65 Wis.2d 735, 223 N.W.2d 616 (1974) this court overruled a trial court's valuation of a hunting camp based upon its purchase price and the cost of improvements as the valuation was outdated by some eight years and evidence of its present value was presented by written appraisals.

The respondent argues that it was not the duty of the court to order an appraisal of the property and improvement since it is the appellant's burden to prove its value and the attorney had two years in which to prepare the case.

In the *Markham* case, present values were presented to the court in the form of expert opinion, yet the court rejected these opinions and valued the property as of the date of purchase. Therefore, this case is distinguishable from the *Markham* case. In the case before the court, there was no testimony offered as to the present value of the real estate. Trial courts should always seek a timely value of appreciating assets. However, the court is not required on its own volition to undertake the appointment of appraisers. The appellant's failure to produce expert real estate testimony required the court to rely upon the out-

dated values. We find no abuse of discretion as to this contention.

The court used a balancing factor in the valuation of the Wheeler Lake cottage given to Mrs. Dean in the decree. The trial court, in its October 6th supplemental decision, discussed the improper valuation of this asset:

"The Court would be remiss if it did not comment on another item; that is, the property at Wheeler Lake. The Court was puzzled during the trial as to the attempts made by defendant to depress the value of the property. The Court did not learn until after the trial that the parties had mutually agreed that the defendant would have this property. Defendant presented a witness as appraiser who placed a value of $15,000 on the cottage. Plaintiff presented an appraisal statement from a realtor in the vicinity who placed a higher value on the property. Defendant objected to the plaintiff's appraisal, because the appraiser was not available for cross examination. The Court, in its decision, accepted the value of the one appraiser who appeared at the trial. However, plaintiff had placed a considerably higher figure on the property. Of course, this was self-serving because, as stated, the parties had evidently agreed that the defendant would have the cottage. There was another factor present which the Court did not choose to employ; i.e., the Court's own personal knowledge of the situation. Wheeler Lake is one of the many lakes in the immediate vicinity of Lakewood, Wisconsin. The Court is thoroughly familiar with the value of lake properties in that area including Wheeler Lake. The property in question abuts a town road, and the Court has traveled past it on numerous occasions. The Court is of the opinion that the Wheeler Lake property could be put on the market tomorrow without an intervening realtor and immediately bring from 20 to 22 thousand dollars. The price of lakefront property in the north is accelerating each year and will continue to do so until the inflationary spiral bursts. In its decision, the Court did not inject its opinion and left the low valuation as a part of the overall equitable adjustment of property settlement. Although the low valuation results in a 5 to 7 thousand dollar benefit to the defendant, the Court does not propose to change that valuation."

The alleged undervaluation of the Kelley Lake property and storage barn was considered by the court to be an offset to the low valuation of the Wheeler Lake cottage Mrs. Dean received in the property division.

*Did the trial court err in denying the appellant's motion to join Mildred Dean and Betty Mayer as parties defendant?*

Sec. 260.11, Stats. 1973, sets forth the procedural rules governing the joinder of party defendants and recites:

"260.11. **Who as defendants.** (1) Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein. A plaintiff may join as defendants persons against whom the right to relief is alleged to exist in the alternative, although recovery against one may be inconsistent with recovery against the other; and in all such actions the recovery of costs by any of the parties to the action shall be in the discretion of the court. . . ."

Under sec. 260.11, Stats., Mrs. Mayer and Mildred Dean were not indispensable parties to this action insofar as the proposed third party complaint joining the two women did not seek the return of the specific property, nor did the appellant seek the inclusion of the specific property in the marital estate. Each woman submitted to deposition questioning, appeared at trial and made themselves subject to examination. We find the appellant has not been prejudiced by the court's refusal to join Betty Mayer and Mildred Dean as the appellant was successful in returning the wrongfully divested assets to the estate.

*The Value of the Respondent's Stock in Dean Distributing Company*

The value of the stock in the Dean Distributing Co. was the subject of substantial controversy at trial. Econo-

mists for each party appeared and gave opinions on the value of this asset. These opinions reflected a difference of $48,000 as to its proper worth. The respondent's expert set the value at $110,000 by using the valuation method of capitalizing past earnings. The appellant's economist rejected the capitalization of earnings evaluation technique as the proper method establishing the value of this closed corporation and he stated that had he used that accounting method he would have placed a $175,000 value on the corporation. The appellant's expert chose to base the corporation's value on the $158,000 book value instead of the capitalization of earnings evaluation method. The experts agreed that generally accepted accounting principles do not limit themselves to one method of evaluation of closely held companies.

The trial court concluded that neither expert opinion represented an accurate evaluation of the company and combined the information elicited in the expert testimony to arrive at a median value of $134,216. The appellant contends that the trial court was in error in not using the liquidated value of the corporate assets. During cross-examination, the respondent's economist admitted that an accepted accounting procedure allows the combining of the corporation's liquid assets (cash on hand, inventory, etc.) and the fixed assets (trucks, machinery, equipment and real estate), to arrive at a liquidated value which in this case would bear a value of at least $140,000. The appellant therefore contends that the liquidated value should have been used by the court rather than the median figure of $134,000 and that the greater amount of at least $140,000 is the proper valuation when the following is given consideration:

"But where, as here, there is sole ownership the values of the shares cannot be less than the amount for which the corporation could be readily liquidated. And the trial court's finding of the 'median' while good enough in *Gooding* is error here."

The *Estate of Gooding*, 269 Wis. 496, 69 N.W.2d 586 (1954) referred to by the appellant is a learned discussion of the problems of valuing closed corporations and how two economists can reach differing opinions based upon the same statistical data. In *Gooding*, one expert valued a share of stock in a closed corporation at $90, the other expert opinioned the value at $193.70 per share, both economists used the same statistical data and balance sheet information. This court affirmed the trial court's decision setting the value at $140 per share or approximately the median value between the two expert opinions, and we stated:

"In fact, in arriving at such comparative value there is no rule of law requiring that any particular factor be given equal weight with another factor.
" . . .
"The trial court may well have concluded that the true market value of this stock lay somewhere between the extremes in value as testified to by these two expert witnesses." *Estate of Gooding, supra* at 512 & 514.

The appellant contends that Mr. Dean, as the sole stockholder in the beer distributorship, can decide to liquidate at any time, thus requiring the court to use that method of valuation. This contention has been rejected by the following language in *Whitman v. Whitman*, 34 Wis.2d 341, 348, 149 N.W.2d 529 (1967):

" 'The fair value of a corporate stock as of any given time where there is no established market value is nearly always a difficult problem. Where the law does not imperatively require the determination of value from the market value alone, there is no exclusive test or measure of actual value.' " *Supra* at 347, *citing* 14 Fletcher, *Corporations* (1966 rev. ed.), p. 1003.

As recited above, the trial court in this divorce action, is not required to accept any one method of stock valuation

as more accurate than another accounting procedure. The court will not disturb a trial court's decision on the valuation of a closed corporation unless it is contrary to the great weight and clear preponderance of the evidence. *Estate of Gooding, supra* at 506. A trial court is free to assess expert opinion and determine fair market value in light of testimony regarding: the nature of the business, the corporation's fixed[1] and liquid assets at the actual or book value,[2] the corporation's net worth, the marketability of the shares,[3] past earnings or losses and future earning potential.

In the present case, the respondent's economist stated that there are some going businesses that are valued at less than liquidated value because often in the context of a closed corporation the personality and endeavors of a single individual can make the difference between profit and loss. The court relied upon this testimony in reaching its decision to value the assets at $134,000 rather than $140,000. The standard for review, as previously stated, is whether the trial court's finding is against the great weight and clear preponderance of the evidence. *Perrenoud v. Perrenoud, supra* at 42; *Markham*

---

[1] Fixed assets such as land, buildings, machinery and equipment are carried on corporate books at original costs less depreciation, and therefore are sometimes undervalued as compared to fair market value. *Estate of Gooding, supra* at 507–08.

[2] It should also be remembered:

"The capital stock of a corporation, its net assets, and its shares of stock are entirely different things. The value of one bears no fixed or necessary relation to the value of the other." *Id.* at 518.

[3] A comparison between a closed corporation and shares of a corporation traded in an established market must consider the following:

". . . that stock in a close corporation lacks marketability, and in making a comparison between such stock and a listed stock in arriving at value it is proper to make some deduction for this inasmuch as investors will pay more for a listed stock than an unlisted one having identical factors of earnings, dividend payments, and book value." *Estate of Gooding, supra* at 518.

*v. Markham, supra* at 741. This testimony, the lack of a singular established method for valuation, and the fact that liquidation sales do not bring a dollar for dollar return indicate that the trial court's decision is supported by the evidence and should be affirmed.

*Implications of the 120-Month Installment Pay Out*

Matters concerning alimony and property division are within the discretion of the trial court and will not be disturbed unless there is an abuse of discretion. *Van Wyk v. Van Wyk, supra* at 108; *Bussewitz v. Bussewitz,* 75 Wis.2d 78, 89–90, 248 N.W.2d 417 (1977). An abuse of discretion results when the trial court has made a mistake of fact, an error in computation, or the property division is inappropriate to the circumstances of the parties. *Id.* at 83–84.

The property division awarded the appellant a 40% share of $265,419 in total marital assets or $106,167. Mrs. Dean received $56,739 at the time of the entry of the divorce decree and the remaining amount rounded out to $49,460 was ordered paid out in installments over the next 120 months in order that she might receive the federal income tax benefits. The judgment provides that the first month's payment is to be $500 and the remainder set at $400 monthly for the next 119 months.

In this case, the trial court made an error in computing the 120-month installment payout from the marital estate. The corrected computation is:

$49,460.00
500.00
_____

$48,960.00 ÷ 119 months = $411.42 per month.

Accordingly, the monthly payments should be $411.42 or the appellant will suffer a loss of $1,358.98, plus interest,

over the 119-month installment payment period. This mistake in computation defeats the intent of the trial court's order to grant the appellant her 40% share of the marital estate. Thus, the mistake requires a modification of the decree in order to fulfill the intent of the property order and preserve treatment of these assets as part of the tax free property division.

Thus, in order for the respondent to become current in his payments it is ordered that he pay to the appellant the sum of $11.42 on the accrued monthly deficiency to this date, plus interest, either in a lump sum payment or added to the remaining installment payment; the payment schedule to be determined by the trial court.

*Property Division and Limited Alimony of $750 for Ten Years*

The division of a marital estate and alimony award are closely related and cannot be viewed in a vacuum from one another. *Johnson v. Johnson,* 78 Wis.2d 137, 145, 254 N.W.2d 198 (1977). *Lacey v. Lacey,* 45 Wis.2d 738, 383-84, 173 N.W.2d 142 (1970) sets forth the following factors to be considered by the trial court in making these determinations:

". . . Such relevant factors certainly include the length of the marriage, the age and health of the parties, their ability to support themselves, liability for debts or support of children, general circumstances, including grievous misconduct, although a division is not a penalty imposed for fault. Whether the property award is in lieu of or in addition to alimony payments is a material factor. Whether the property was acquired during the marriage or brought to the marriage makes a difference. Since the Wisconsin statute provides that separate property of the wife, possessed by her before the marriage or acquired solely by her efforts, is to be awarded to her, the amount of such separate estate is a proper factor to consider in determining how much of the husband's or marital property is also to be awarded to her." *Id.* at 383-84.

It has been stated that the failure of the trial court to consider relevant factors is an abuse of discretion, *Bussewitz v. Bussewitz, supra* at 90, but further, it should be pointed out that the court need not discuss each and every factor listed above. *Wilberscheid v. Wilberscheid,* 77 Wis.2d 40, 46, 252 N.W.2d 76 (1977).

In this case, the court considered the yearly income of the combined alimony and property division payout giving the appellant a total annual income of $13,800 of which $9,000 is taxable. It should also be remembered that the unpaid balance of the property division payable to Mrs. Buena Dean was ordered to accrue interest at 7% per annum. In answer to the question of property division and alimony, Mr. Dean testified that his salary is approximately $14,000 from Dean Distributing, not including business expenses.

In the recent case of *Van Wyk v. Van Wyk, supra,* this court approved a 50–50 split of a $230,000 estate compiled by a couple married 24 years. However, in *Van Wyk,* the division was in lieu of alimony. Additionally, the Van Wyks' two minor children were granted support payments of $125 a month. The comparison between this appeal and *Van Wyk* supports the trial court's order in regard to the 40% property division and the granting of $750 a month in alimony. Considering the respondent's total economic outlook and the needs of the appellant, when the alimony and property payments are viewed together, we hold the sum of $196,000, not including interest to be received by the appellant over the next 10 years, is fair and adequate.

The fact that other courts may have granted a larger share of the marital estate is not cause for this court to upset the present division. The trial court's order contemplated that the combined amounts of the property division and alimony would allow Mrs. Dean to live

comfortably and indicates that it considered the length of the Dean marriage and the fact that most of the assets were acquired during the 32 year marriage.

The ten-year period of limited alimony was justified by the trial court wherein it stated:

"In making the alimony a limited alimony rather than permanent, the Court, in addition to considering the tax impact, also considered the age of the parties. The Court believes that such consideration warrants the assumption, based on the Court's decision on property and alimony, that the defendant should have a fair 'nest egg' when she becomes eligible for social security and medicare. Then insofar as she is concerned, there is the very pertinent factor that she is capable of being employed. . . . On the other side of the coin, the experts on limited alimony point out that a man should be entitled to enjoy his golden age years based on his social security, medicare and possible pension without the anchor of alimony being hung around his neck for the rest of his life."

We do not hold that the trial court committed an abuse of discretion by emphasizing Mr. Dean's approaching retirement. His ability to pay alimony will be diminished by this change in employment status. Additionally, the award does not ignore the needs of Mrs. Dean. We agree with the trial court's opinion that the $196,000, in addition to the accumulated interest she will receive in the next ten years, is a sufficient sum to allow her to enjoy her "golden age years" at her present standard of living.

*Attorney's Fees and Disbursements Incurred in This Appeal*

The trial court's decree provided for the appellant's trial attorney's fees of $5,000 and $1,300 for disbursements to be paid by the respondent. However, on motion, the appellant sought the respondent's undertaking her appeal costs. This motion was denied with the trial

court stating that the property division and earlier order on attorney's fees was adequate.

*Bloomer v. Bloomer, supra* at 137 recites the relevant considerations in regard to attorney's fees:

"Where trial attorneys' fees are involved, the trial court should consider the need of the wife for the allowance and the ability of the husband to pay. *Dees v. Dees,* 41 Wis.2d 435, 164 N.W.2d 282 (1969). When appellate attorneys' fees are at issue, the trial court must consider an additional factor, whether reasonable grounds exist to support a belief that the appeal will be successful. *Greenlee v. Greenlee, supra,* 23 Wis.2d at 677."

In *Bloomer,* the court remanded the action because the trial court failed to expressly consider the likelihood of success on appeal. In this case, there is nothing in the record to indicate that the trial court failed to consider the above-stated standards.

*By the Court.*—Judgment and order modified, and, as modified, affirmed.